SANTO SORGE, Appellant, v. PARADE PUBLICATIONS, INC., Respondent.

First Department, February 27, 1964.

*James F. Murray, Jr.,* of counsel (*Ernest P. Seelman* and *Michael J. Kenny* with him on the brief), for appellant.

*Edward N. Costikyan* of counsel (*William S. Wells* with him on the brief; *Paul, Weiss, Rifkind, Wharton & Garrison,* attorneys), for respondent.

STEVENS, J.   This action for libel is based upon an article which appeared in the January 21, 1962 edition of defendant's weekly publication entitled " *Parade* ".   This weekly is sold nationally to various newspapers and appears as an insert in their Sunday editions.   In excess of 11,000,000 copies were sold.   Shipments of " *Parade* " began on or about January 3, 1962 and were 98% completed on or before January 16, 1962. The present action was commenced by service of a summons upon the defendant on January 17, 1963.

Defendant moved to dismiss the complaint on the ground that the action was not timely brought within one year as provided in law, asserting the cause of action accrued upon delivery of " *Parade* " to the common carrier January 3, 1962.   It is from the order granting the motion, and a later judgment entered thereon, that plaintiff appeals.

On this appeal appellant asserts publication in New York occurred when " *Parade* " was made available for sale to the general public, and that for civil libel to obtain, the libelous material must be read and understood by a third party.   At any rate the appellant urges that since final shipment was on January 17, 1962, the action is timely for the last shipment controls.

Respondent's position is that publication occurred on January 3, 1962, when the allegedly libelous matter was delivered to a common carrier for delivery to the various consignees, and that as a matter of public policy the dismissal should be sustained.

The laws permitting suit for libel are designed to afford redress to an innocent or wronged victim.   The law which erects

a barrier by declaring a limitation of time during which such action must be instituted is designed to protect the alleged wrongdoer from having to face stale claims which it may be totally unprepared to meet (*Chase Securities Corp.* v. *Donaldson,* 325 U. S. 304, 314). The so-called single publication rule safeguards the libelor from continuous harassment by a multiplicity of actions and minimizes some of the jurisdictional and legal problems which the person wronged might face in seeking redress. It is a modification of the " common law rule that each communication of defamatory matter constitutes a separate publication ". Because of necessity " and from a recognition that mass communication of a single defamatory communication, for practical purposes, constitutes a single wrong, the courts have developed a theory of a ' single publication ' as one composite tort which embraces all the acts involved in the printing and distribution of a newspaper or magazine to its millions of readers in many jurisdictions. Under this rule, there is but one publication and thus but one tort " (Harper & James, Law of Torts, § 5.16; see *Gregoire* v. *G. P. Putnam's Sons,* 298 N. Y. 119; *Wolfson* v. *Syracuse Newspapers, Inc.,* 254 App. Div. 211, affd. 279 N. Y. 716). The gist or substance of the wrong of defamation, be it slander or libel, is the intentional or negligent communication by the author of the defamatory idea to some third person, not its principal subject. If unprivileged, liability may result. " Printing a libel is regarded as a publication when possession of the printed matter is delivered with the expectation that it will be read by some third person, *provided that result actually follows* " (emphasis supplied) (*Youmans* v. *Smith,* 153 N. Y. 214, 218).

We must apply these general principles to the factual situation and the arguments of the respective parties, in an attempt to resolve the basic issue whether publication occurred upon delivery to a carrier, or upon such appearance as to constitute availability to the general reading public. A weekly of the character here involved is part of a commercial enterprise designed to be read, and is not a " flower born to blush unseen and waste its sweetness on the desert air " of express car aridity. On simple analysis it would seem that delivery of bundles to a carrier, as was done here, would not constitute publication. But cases are not always resolved by simple analysis.

Attention is directed to the case of *National Cancer Hosp.* v. *Confidential, Inc.* (151 N. Y. S. 2d 443), which supports respondent's view that publication occurred at the time of the

first shipment. *Donato* v. *Kiendl* (N. Y. L. J., July 27, 1948, p. 149, col. 1, affd. 276 App. Div. 1077, mot. for lv. to app. den. 301 N. Y. 814), might seem to aid respondent except that the Appellate Division observed " [i]n affirming we do not confine ourselves to the ground upon which Special Term rested."

*Gregoire* v. *G. P. Putnam's Sons* (298 N. Y. 119, *supra*), cited by both parties, is not dispositive of this issue. That case went up on a single certified question of law: " Do sales from stock by a book publisher of copies of a book containing libelous material constitute republications of the libelous matter, so as to give rise to new causes of action within the meaning of Section 51, subdivision 3, of the Civil Practice Act [the one-year Statute of Limitations] where the copies sold are from an impression made and released for wholesale distribution *more than one year prior to the dates of such sales?*" (p. 122) (emphasis supplied). The court, in answering in the negative, gave specific recognition to the single publication rule for it concluded that the release of thousands of copies, though at different times, " affords the one libeled a legal basis for only one cause of action " (p. 126). Moreover, the court continued, the complaint " arises when the finished product is released by the publisher for sale in accord with trade practice " (p. 126). This did not happen here. The publication was only delivered to the carrier in bundles. It was not released for sale as of the date of delivery to the carrier. The argument that the *Gregoire* case (*Gregoire* v. *G. P. Putnam's Sons, supra*) supports the view that a release for distribution by deposit with a common carrier constitutes publication must be rejected. The only question before the court involved the single publication rule. Publication, as the word itself indicates, involves the act of disseminating or communicating information to third persons. " There can be no actionable libel unless the defamatory writing, through some act or the carelessness of the defendant, is read by or otherwise communicated to someone other than the person defamed who understood its meaning and knew to whom it referred " (*Weidman* v. *Ketcham,* 278 N. Y. 129, 131; Am. Jur., Libel and Slander, § 90). " [T]he damages recoverable in libel are the plaintiff's loss of reputation in the minds of those who know him or know about him, together with this mental suffering as a result of the libel." (*Mattox* v. *News Syndicate Co., Inc.,* 176 F. 2d 897, 901.) Obviously the releasing of control by defendant, by shipment of bundles of a publication designed to be an insert for a newspaper, would not constitute publication. The information therein contained

is not communicated to third persons. The bundles of "*Parade*" were intended for the general public and until the time of such release and communication to a third person, either by sale or by actual reading, no injury could be suffered and no claim would exist. Also, there remained *locus penitentiæ* for those composing and writing the offending language. The injury in fact might never occur. In this day of mass transportation mere delivery to a carrier of bound publications need not be a disposition beyond recall if the sender so decides, for the agreement of carriage is no more than a contract either in fact or implied in law that the subject matter will be carried and delivered intact in accordance with the terms agreed upon or the applicable provisions of law.

*People* v. *Bihler* (154 App. Div. 618, affd. 210 N. Y. 592), cited by both parties, dealt with criminal libel and is not decisive. There the communication was sent by mail and the sender had divested himself of control over the libelous matter beyond any power of recall. In *Zuck* v. *Interstate Pub. Corp.* (317 F. 2d 727 [2d Cir.]), the court, after an extended discussion of New York law, held "under the New York single publication rule appellant's cause of action accrued no earlier than December 22, 1960, the date on which the March 1961 issue of 'Movie World' went on sale to the public at newsstands throughout the United States" (p. 733). It thus rejected the argument that mere delivery to a carrier or distributor constituted publication. The Federal court, on the basis of the facts and the state of the law in New York, made the interpretation which it believed "that court [Court of Appeals] would make in light of the state policies underlying the single publication rule" (p. 731). See, contra, *Backus* v. *Look, Inc.* (39 F. Supp. 662).

"Since a libel is predicated upon the injury to the reputation of the one attacked, and reputation is the opinion of others, no cause of action can arise unless the accusation is in some way brought to the attention of a third person. This bringing the accusation to the attention of a third person is called the act of publication." (Seelman, Law of Libel and Slander in New York, p. 115, § 121.) And "it is necessary not only that the defamatory matter be brought to the attention of a third person but that he understand its defamatory significance." (Restatement, Torts, § 577, *Comment* p. 193; Odger, Libel and Slander, 6th ed. p. 131; 53 C. J. S., Libel and Slander, § 79.)

Since New York has a short Statute of Limitations of one year in defamation cases (CPLR 215, formerly Civ. Prac.

Act, § 51), to hold that mere delivery of a bundled publication to a carrier constitutes publication so as to relieve the compositor and writer of liability, could well result in almost total deprivation of any right of redress to the person wronged. The date for release of the offending article or book could be set for almost one year subsequent to such delivery. The Statute of Limitations, though one year by its terms, could prove to be one day in its application particularly when considered in conjunction with the single publication rule adopted in New York. Reason, law and equity compel rejection of such a premise.

Publication occurred when the matter was availed of for its ultimate purpose by public distribution. Mere relinquishment of possession by delivery of this weekly " Parade " to the common carrier, without more, did not constitute publication. It is the date of actual distribution rather than what may be termed the " release date " which controls.

The order appealed from should be reversed on the law, and the judgment vacated, with costs to appellant.

McNALLY, J. (dissenting). I would affirm on the ground that this action for libel is barred by the one-year Statute of Limitions of subdivision 3 of section 51 of the Civil Practice Act (now CPLR 215, subd. 3). A single issue of defendant's mass publication intended to be incorporated in various Sunday, January 21, 1962, newspapers was released to carriers for shipment to the publishers of said newspapers commencing January 3, 1962 and on January 16, 1962, 98% had been shipped. The prosecution of this action is barred because the defendant, in accordance with trade practice, irrevocably released the offending issue more than one year prior to its commencement. (Gregoire v. G. P. Putnam's Sons, 298 N. Y. 119; Donato v. Kiendl, N. Y. L. J., July 27, 1948, p. 149, col. 1, affd. 276 App. Div. 1077, mot. for lv. to app. den. 301 N. Y. 814; Hartmann v. Time, Inc., 60 N. Y. S. 2d 209, affd. 271 App. Div. 781.)

RABIN, J. P., EAGER and STEUER, JJ., concur with STEVENS, J.; McNALLY, J., dissents and votes to affirm in opinion.

Order and judgment reversed upon the law, with costs to the appellant, defendant's motion to dismiss the complaint denied and the judgment vacated.