Frank C. OSMERS, Jr., Plaintiff,

v.

PARADE PUBLICATIONS, INC., Defendant.

United States District Court
S. D. New York.

Oct. 13, 1964.

McCarthy & McGrath, New York City, for plaintiff, Herman J. McCarthy, New York City, of counsel.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for defendant, Martin Kleinbard and William S. Wells, New York City, of counsel.

TYLER, District Judge.

This action for libel is predicated upon an article appearing in the edition of "Parade", a weekly magazine, dated Sunday, May 5, 1963. Defendant publisher of "Parade" moves to dismiss upon the ground that the action is barred by the applicable statute of limitations.

Exhibits submitted by plaintiff clearly indicate his efforts prior to the commencement of this action to obtain a letter of retraction and apology from the publisher. At least as early as January 2, 1964, counsel for the parties discussed the proposed contents of such a letter. After several months of unsuccessful negotiations, plaintiff's counsel, aware of the approaching deadline for filing suit within the one year period of limitations in New York (CPLR § 215(3)), sent a final letter, dated April 25, 1964, demanding retraction of the charges. One of plaintiff's lawyers states that in response to this letter, he received a telephone call three or four days later from defendant's attorneys advising him that their client was ready to sign an appropriate letter of apology. Late in the afternoon of May 1, 1964, however, he received another telephone call from the same lawyer to the effect that defendant had changed its mind and was unwilling to furnish or deliver any such letter. Plaintiff thereupon commenced this action on May 4, 1964.

Although "Parade" is a supplement designed to be inserted and sold on newsstands as part of the Sunday edition

of local newspapers, defendant asserts that approximately 1,800 copies of the magazine were sold to the public from some 85 newsstands in or near Syracuse, New York, prior to May 5, beginning Tuesday, April 30.[1] Accordingly, defendant argues that the statute of limitations was tripped by sales on April 30, 1963 and that thus this action is time-barred. Parenthetically, defendant denies that its belated and rather abrupt withdrawal of consideration and negotiation of a retraction letter was designed to or actually did mislead plaintiff in the necessary and timely assertion of his rights.

In Gregoire v. G. P. Putnam's Sons, 298 N.Y. 119, 126, 81 N.E.2d 45 (1948), the Court of Appeals of New York extended the "single publication rule" of this state to books, declaring that a defamation cause of action "arises when the finished product is released by the publisher for sale in accord with trade practice". Just how to apply this deceptively simple rule to the facts of a particular case has plagued the courts ever since Gregoire. The following principles, however, have been established: the cause of action accrues on the date of the first publication of the libel, National Cancer Hospital of America v. Confidential, Inc., 151 N.Y.S.2d 443 (Sup. Ct.1956); "the date of 'publication' of an alleged libel is not determined by or even related to the printed date on the printed matter, and may well have been days or perhaps weeks before that date," Stella v. James J. Farley Ass'n, Inc., 204 Misc. 998, 122 N.Y.S.2d 322, 324–325 (1953); the date on which the libelous publication is delivered to a common carrier for shipment to distributors and newsstands is not the publication date, Sorge v. Parade Publications, Inc., 20 A.D.2d 338, 247 N.Y.S.2d 317 (1964).[2]

Thus, the act of legal publication occurs some time between the date of delivery to a common carrier and the date printed on the cover of the magazine. In Zuck v. Interstate Publishing Corp., 317 F.2d 727, 731 (2d Cir. 1963), the Court of Appeals for the Second Circuit pointed the way that must now be taken in establishing the precise date:

"As the New York Court of Appeals has not yet resolved the conflicting interpretations of its Gregoire test of accrual, we are required to apply to the facts before us the interpretation which we believe that court would make in light of the state policies underlying the single publication rule."

It should be borne in mind, of course, that the statute of limitations is designed to protect the alleged wrongdoer from stale claims and that the single publication rule is designed to safeguard him against a multiplicity of actions. On the other hand, any rule fixing the accrual date must reflect balanced consideration of the difficulties encountered by plaintiffs with genuine grievances. Judge Waterman in Zuck, commenting upon the unusually short period of limitations for libel, said at 731 of 317 F.2d:

"To fix as the date of legal publication even the time that the offending matter is placed on sale to the public may create a trap for unwary plaintiffs; magazines are often post-dated several weeks or months after the actual date they are placed on sale to the public. To fix the accrual date *prior* to receipt by the public of the libelous material, however, is normally to begin the running of the statute of limitations before the time that the offending publication has been

---

1. It is unclear whether these newsstands were located in the City of Syracuse or in neighboring small towns. Moreover, plaintiff states that investigations on his behalf cast up doubts that any such "pre-release" sales took place.

2. Although the Sorge case also involved "Parade", the only question before the Appellate Division in that case was whether or not delivery to a common carrier constituted legal publication. In deciding that it did not, the court left open the question of when is the "accrual date" of publication.

brought to the victim's attention, and, indeed, prior to the occurrence of any harm to his reputation. The result, thus, is an effective shortening of an already short limitation period." [Footnote omitted.]

No unusual quantum of imagination is needed to contemplate the consequences of holding that a plaintiff cannot recover damages for an allegedly libelous article printed in a magazine of nationwide circulation, boasting of millions of readers, because a small fraction of the total number of copies may have been sold prior to the designated release date from certain selected "pre-release" newsstands. If it were so held, scurrilous articles could be printed with impunity by simply selling a few advance copies and keeping the date secret until served with process. The danger, as Judge Levy noted in Stella v. James J. Farley Ass'n, Inc., supra, at 325 of 122 N.Y.S.2d, is that "the present rule completely and entirely concentrates in the defendants exclusive knowledge and control of all the elements of proof as to the precise time when the cause of action accrued to the plaintiffs—and that accrual is not affected by any awareness on the plaintiffs' part".

Stella involved a piece of political campaign literature printed in the form of a tabloid. Most of the 25,000 copies were mailed to the voters, but the case turned on whether an early hand-delivery of an unspecified number of copies on August 17—several days prior to a later distribution by mail—tripped the statute. Judge Levy stated at 330 of 122 N.Y.S.2d:

"In my opinion the date of publication (within the concept of the 'one publication rule') of a newspaper is not the date that a small percentage of the issue is distributed to readers, but rather the date when the great mass of the issue reaches those for whom the publication is intended."

Since he did not have before him the facts necessary for applying this standard, Judge Levy denied the motion to dismiss, but permitted defendants to plead and raise the statute of limitations defense at trial—i. e. to litigate the question of when the act of publication occurred, with especial reference to the number of copies distributed by hand and the date that the mailed copies reached the voters. After the trial, the Court of Appeals dismissed the action as against the defendant in question on the ground that August 17 was the date of publication. Toomey v. Farley, 2 N.Y.2d 71, 156 N.Y.S.2d 840, 138 N. E.2d 221 (1956). This certainly was not a reversal of Judge Levy's decision —as defendant here contends—nor was it a rejection of his reasoning.

■ The test enunciated by Judge Levy in Stella has much to recommend it. In Zuck v. Interstate Publishing Corp., supra, the date of the first sale of the magazine in question happened to be the same as the date on which the bulk of that issue went on sale to the public at newsstands throughout the United States. But when these events do not occur simultaneously, what is really determinative is the earliest date on which the libel was substantially and effectively communicated to a meaningful mass of readers—the public for which the publication was intended, not some small segment of it.

■ To apply this standard to the present case, it will be necessary, *inter alia*, to determine the names and locations of newsstands where predated copies of "Parade" were sold, the number of copies sold prior to May 5, 1963, the total number of copies of that edition circulated throughout this state and the United States, and the extent to which predate sales are an established and recognized practice of magazine distribution. Since none of these facts has been established in the crucible of adversary investigation, examination and cross-examination, defendant's motion to dismiss is denied without prejudice to its renewal at trial in reasonable conformity to the principles hereinabove discussed.

So ordered.