**Herbert KHAURY, a/k/a Tiny Tim, Plaintiff,**

v.

**PLAYBOY PUBLICATIONS, INC., et al., Defendants.**

**No. 76 Civ. 4836.**

United States District Court, S. D. New York.

April 22, 1977.

Philip M. Damashek, P. C., New York City, for plaintiff.

Wachtell, Lipton, Rosen & Katz, New York City, for defendants; Ronald Barliant, Devoe, Shadur & Krupp, Chicago, Ill., of counsel.

## OPINION AND ORDER

KEVIN THOMAS DUFFY, District Judge.

On September 22, 1976, plaintiff, the popular entertainer known to audiences as Tiny Tim, commenced this action for damages for defamation, personal and professional injury, and invasion of privacy in violation of Sections 50 and 51 of the New York Civil Rights Law, resulting from the publication of an article entitled "Miss Vicki" appearing in the October, 1975 issue of *OUI* magazine. Defendants have moved for summary judgment dismissing the complaint, claiming that the action is barred by the statute of limitations. Defendant Hugh Hefner also has moved to dismiss the action as against him for lack of *in personam* jurisdiction, asserting insufficient service of process.

In support of the motion for summary judgment, defendants have filed affidavits attesting to the following facts, which are not controverted by plaintiff. September 4, 1975 was designated as the on-sale date of the October 1975 issue of *OUI* magazine. A total of 1,779,990 copies were distributed to the public; of these, 1,499,845 were newsstand copies, 87,190 were by subscription, and the balance of the copies were distributed abroad or as complimentary issues. With respect to the newsstand copies, these magazines were delivered to common carriers in Illinois during the week of August 12, 1975, for shipment to the wholesale dealers who customarily delivered the copies to retailers within three days before or after the on-sale date. The retailers, in the ordinary course of business offered the copies to the public upon receipt. In the New York area delivery to the retailers was completed by September 7, 1975.

The subscription copies were delivered, each bearing a subscriber's name and address and correct postage prepaid, to the United States Postal Service, in Effington, Illinois, between August 13 and 19, 1975. In the normal course, these copies would reach subscribers within five days of mailing.

It is also undisputed that the governing statute of limitations is one year from the accrual of the claim. N.Y.C.P.L.R. 215(3). The only issue raised by this motion is when plaintiff's claim accrued. Defendants argue that under New York's "single publication rule," plaintiff's cause of action accrued no later than September 7, 1975, rendering this action, commenced on September 22, 1976, untimely. Plaintiff contends that his claim accrued in October 1975, the date shown on the issue, and, alternatively, that defendants have failed to sufficiently prove the on-sale date. He also posits that the "single publication rule" is inapplicable to alleged violations of Sections 50 and 51 of the New York Civil Rights Law. Plaintiff's position is untenable as a matter of law.

The leading New York case in the area is *Gregoire v. G. P. Putnam's Sons*, 298 N.Y. 119, 81 N.E.2d 45 (1948), in which the New York Court of Appeals held that publication of a defamatory article in a mass distributed book, newspaper or periodical gives rise to but one cause of action "which arises when the finished product is released by the publisher for sale in accord with trade practice." 298 N.Y. at 126, 81 N.E.2d at 49.

In *Zuck v. Interstate Publishing Corporation*, 317 F.2d 727 (2d Cir. 1963), the Second Circuit construed the *Gregoire* formulation to mean the "on-sale" date, or date that the publication went on sale to the public at newsstands throughout the United States, notwithstanding the date stated on the magazine cover, or that on which copies were delivered to wholesaler dealers and common carriers for distribution to retailers.[1] The New York courts have likewise ruled that the date of actual distribution to the public controls. *Sorge v. Parade Publications, Inc.*, 20 A.D.2d 338, 247 N.Y.S.2d 317 (1964); *Sullivan v. Crisona*, 54 Misc.2d 478, 283 N.Y.S.2d 62 (Sup.Ct.N.Y.Co.1967). Since substantially all of the copies of the October, 1975 issue of *OUI* magazine were distributed to the public by September 7, 1975, plaintiff's cause of action accrued on that date.

Plaintiff erroneously relies on *Osmers v. Parade Publications, Inc.*, 234 F.Supp. 924 (S.D.N.Y.1964) in asserting that defendants, in order to succeed on their motion, must show the names and locations of newsstands where copies of the magazine were sold, the number of copies sold prior to and following the date of October, 1975 shown on the cover, and the extent to which pre-date sales are an established practice of magazine distribution. The court in *Osmers* was confronted with the situation where a limited number of copies of the offending publication were sold in advance of general distribution to the public, and in order to determine whether a motion to dismiss based on untimely assertion of the claim, the court set up the evidentiary guidelines cited by plaintiff to aid in fixing the date of legal publication. The court carefully distinguished the situation presented from that presented in *Zuck*:

"In *Zuck v. Interstate Publishing Corp.*, supra, the date of the first sale of the magazine in question happened to be the same as the date on which the bulk of that issue went on sale to the public at newsstands throughout the United States. But when these events do not occur simultaneously, what is really determinative is the earliest date on which the libel was substantially and effectively communicated to a meaningful mass of readers—the public for which the publica-

---

1. Plaintiff's suggestion that equity demands that the cover date be deemed the legal publication date which would trigger the running of the statute of limitations is without merit; his invitation to rule that the industry-wide practice of post-dating magazines constitutes "active concealment" is declined. The contention that defendants actively concealed the date of publication is wholly without support in the record.

tion was intended, not some small segment of it."

234 F.Supp. at 927.

The instant case clearly is not of the *Osmers* variety. Here defendants do not contend that the legal publication date, triggering the running of the statute of limitations, should be deemed the date of sale of a few advance copies prior to the general release date. Rather, September 7, 1975 is precisely "the same as the date on which the bulk . . . went on sale to the public at newsstands throughout the United States;" indeed, of the total 1,779,-990 copies distributed, 1,587,035 copies were available to the public by that date. Since plaintiff's suit was brought more than one year after this date, it is barred by the statute of limitations.

Plaintiff asserts that the single publication rule is inapplicable to claims of violation of Sections 50 and 51 of the New York Civil Rights Law, an invasion of privacy statute, forbidding commercial appropriations of names and likenesses.[2] He argues that the rule has been applied only in defamation situations, and the difference between the interests sought to be protected by defamation suits and Section 51 actions—reputation and income, respectively—are sufficient to preclude the use of the rule to bar this claim. He thus maintains that each and every publication of the 1,779,990 copies of the October, 1975 issue of *OUI* is a separate cause of action; since defendants have not proved that all copies were sold earlier than September 22, 1975, summary judgment is inappropriate.

I am not aware of any New York case which settles the question; it is therefore incumbent on me to decide the issue as I think the New York courts would rule. An analysis of the issue is rooted in the purpose behind the single publication rule. This rule was adopted in recognition of the vast multiplicity of suits which could arise from mass publications which transcend a variety of medias and state lines, and the attendant problems of choice of law, indefinite liability, and endless tolling of the statute of limitations. *See Gregoire v. G. F. Putnam's Sons*, 298 N.Y. at 124–25, 83 N.E.2d 152, Prosser, *Interstate Publications*, 51 Mich.L.Rev. 959, 960–964 (1953).

It would appear that the rule, then, is not aimed at the particular tort alleged, but rather at the manner in which the tort is executed. If the wrong arises out of a mass communication, then whether it sounds in defamation or statutory invasion of privacy, the same considerations should apply. *See* Prosser, *Interstate Publication*, 51 Mich.L.Rev. 959, 963–64 (1953). Indeed, the late Judge Hincks of the Second Circuit, sitting on the district court of Connecticut, so held in *Fouts v. Fawcett Publications*, 116 F.Supp. 535, 536 (D.Conn.1953); and other jurisdictions have likewise ruled. *See, e. g., Jackson v. Ideal Publishing Corp.*, 274 F.Supp. 318 (E.D.Pa.1967). Additionally, the Uniform Single Publication Act § 1, 9C Uniform Laws Annotated, which expressly applies the single publication rule to invasion of privacy claims founded upon mass communications,[3] has been adopted in

---

**2.** The applicable sections of the New York Civil Rights Law provide as follows:

§ 50. *Right of privacy*
A person, firm or corporation that uses for advertising purposes, or for the purposes of trade, the name, portrait or picture of any living person without having first obtained the written consent of such person, or if a minor of his or her parent or guardian, is guilty of a misdemeanor.

§ 51. *Action for injunction and for damages*
Any person whose name, portrait or picture is used within this state for advertising purposes or for the purposes of trade without the written consent first obtained as above provided may maintain an equitable action in

the supreme court of this state against the person, firm or corporation so using his name, portrait or picture, to prevent and restrain the use thereof; and may also sue and recover damages for any injuries sustained by reason of such use and if the defendant shall have knowingly used such person's name, portrait or picture in such manner as is forbidden or declared to be unlawful by the last section, the jury, in its discretion, may award exemplary damages.

**3.** Section 1 of the Uniform Single Publication Act, 9C Uniform Laws Annotated, provides as follows:

§ 1. No person shall have more than one cause of action for damages for libel or slan-

at least eight jurisdictions.[4]

I therefore believe that were the New York courts faced with the issue, they would follow the lead of these other jurisdictions and, in recognition of the aims of the single publication rule, apply the rule to a claim of violation of Section 51 founded upon a mass publication. This being the case, plaintiff's claim is time-barred.[5]

Defendant's motion for summary judgment is granted and the complaint dismissed. In view of this disposition, I need not reach a consideration of defendant Hefner's motion.'

IT IS SO ORDERED.

der or invasion of privacy or any other tort founded upon any single publication or exhibition or utterance, such as any one edition of a newspaper or book or magazine or any one presentation to an audience or any one broadcast over radio or television or any one exhibition of a motion picture. Recovery in any action shall include all damages for any such tort suffered by the plaintiff in all jurisdictions.

4. Arizona (A.R.S. § 12–651); California (West's Ann.Civ.Code, §§ 3425.1, *et seq.*); Idaho (I.C. §§ 6–702, *et seq.*); Illinois (Ill.Rev.Stat. ch. 126 §§ 11, *et seq.*); New Mexico (1953 Comp. §§ 40–27–30, *et seq.*); North Dakota (N.D.C.C. 14–02–10); Panama Canal Zone (4 C.Z.C. 4891–4895); Pennsylvania (12 P.S. §§ 2090.1, *et seq.*)

5. I note that plaintiff's second cause of action sounds in prima facie tort, seeking damages for personal and professional injury as a result of defendants' portrayal of plaintiff's photographs. Neither party makes mention of this cause of action; however, it is clear that the harm allegedly sustained is the same as that caused by defamation, i. e., injury to reputation, and the same considerations apply. *See Morrison v. National Broadcasting Company,* 19 N.Y.2d 453, 280 N.Y.S.2d 641, 227 N.E.2d 572 (1967).