[Civ. No. 61537. Second Dist., Div. Five. Feb. 24, 1982.]

FRANK McGUINESS, Plaintiff and Appellant, v.
MOTOR TREND MAGAZINE et al., Defendants and Respondents.

**COUNSEL**

Robert W. A. Mommaerts for Plaintiff and Appellant.

Youngman, Hungate & Leopold, Joel M. Smith and Louis P. Petrich for Defendants and Respondents.

**OPINION**

**ASHBY, J.**—In this libel action plaintiff Frank McGuiness appeals from a summary judgment in favor of defendants Motor Trend Magazine et al., which was granted on the ground that the action is barred

by the one-year statute of limitations. (Code Civ. Proc., § 340, subd. 3.)[1]

According to the allegations of the complaint, plaintiff was libeled "[i]n the August, 1975, issue of MOTOR TREND MAGAZINE" by a photo caption which indicated that he, along with the other three persons in the photo, had been indicted. Plaintiff filed his complaint on July 29, 1976.

According to the uncontradicted affidavits and exhibits in support of defendants' motion for summary judgment, the August 1975 issue of Motor Trend Magazine was distributed to subscribers and to newsstands for sale to the public no later than July 24, 1975, in accordance with Motor Trend's general policy. The general release date or on-sale date for the August 1975 issue was July 24, 1975, and Motor Trend's contract with Curtis Circulation Company required that the August 1975 issue reach retailers no later than July 23, 1975. The magazine also had a regular monitoring system to check the effectiveness of the post office in delivering publications to subscribers, and this four-state sampling showed that the August 1975 issue reached subscribers in Florida, Iowa, New Jersey, and Washington on July 19, July 22, July 18, and July 17, of 1975.

██ Under the Uniform Single Publication Act, adopted in California, "No person shall have more than one cause of action for damages for libel or slander or invasion of privacy or any other tort founded upon any single publication ... such as one issue of a ... magazine ...." (Civ. Code, § 3425.3; *Belli* v. *Roberts Brothers Furs* (1966) 240 Cal.App.2d 284, 288 [49 Cal.Rptr. 625].)

In applying this statute, California follows the well-established rule that for purposes of the statute of limitations the cause of action accrues "upon the first general distribution of the publication to the public." (*Belli* v. *Roberts Brothers Furs, supra*, at p. 289, citing *Hartmann* v. *Time* (3d Cir. 1947) 166 F.2d 127; *Tocco* v. *Time, Inc.* (E.D.Mich. 1961) 195 F.Supp. 410; *Hazlitt* v. *Fawcett Publications* (D.Conn. 1953) 116 F.Supp. 538; *McGlue* v. *Weekly Publications, Inc.* (D.Mass. 1946) 63 F.Supp. 744. See Annot. (1972) 42 A.L.R.3d 807,

---

[1]The notice of appeal from the motion granting summary judgment is liberally construed as from the actual judgment. (Cal. Rules of Court, rules 1(a), 2(c); *Helfer* v. *Hubert* (1962) 208 Cal.App.2d 22, 25 [24 Cal.Rptr. 900].)

811, 822-825; *Khaury* v. *Playboy Publications, Inc.* (S.D.N.Y. 1977) 430 F.Supp. 1342.) Plaintiff's complaint was filed more than one year beyond the date of the first general distribution to the public, and therefore was untimely.

To avoid the bar of the statute of limitations, plaintiff argues (1) that he should be entitled to rely upon the cover date of the magazine or (2) that the statute of limitations should not be deemed to have commenced until plaintiff discovered the libel. Neither contention has merit.

The courts have uniformly rejected the contention that the date on the cover of the publication is controlling. (*Belli* v. *Roberts Brothers Furs, supra,* 240 Cal.App.2d at pp. 289-290; *McGlue* v. *Weekly Publications, Inc., supra,* 63 F.Supp. at p. 745; *Tocco* v. *Time, Inc., supra,* 195 F.Supp. at p. 413; *Khaury* v. *Playboy Publications, Inc., supra,* 430 F.Supp. at p. 1344.) Plaintiff cites no authority from any jurisdiction which has held that the plaintiff may rely upon the cover date, regardless of the date of actual distribution to the public. Even the two cases cited by plaintiff as containing language critical of the actual distribution rule nevertheless followed that rule in light of its well-established authority. (*Zuck* v. *Interstate Publishing Corp.* (2d Cir. 1963) 317 F.2d 727, 731 & fn. 6, 733; *Stella* v. *James J. Farley Ass'n* (1953) 204 Misc. 998 [122 N.Y.S.2d 322, 324-326, 330], affd. (1954) 284 App. Div. 873 [135 N.Y.S.2d 234].) There is no basis for concluding that by virtue of the date placed on the cover of the magazine defendants are estopped to raise the statute of limitations or are guilty of fraudulent concealment which tolls the statute. In *Khaury* v. *Playboy Publications, Inc., supra,* 430 F.Supp. at page 1344, footnote 1, the court said, "Plaintiff's suggestion that equity demands that the cover date be deemed the legal publication date which would trigger the running of the statute of limitations is without merit; his invitation to rule that the industry-wide practice of post-dating magazines constitutes 'active concealment' is declined. The contention that defendants actively concealed the date of publication is wholly without support in the record."

Plaintiff next contends that a "rule of discovery" should apply, citing *Manguso* v. *Oceanside Unified School Dist.* (1979) 88 Cal.App.3d 725, 728-731 [152 Cal.Rptr. 27], and *Tom Olesker's Excit. W., etc.* v. *Dun & Bradstreet, Inc.* (1975) 61 Ill.2d 129 [334 N.E.2d 160]. These cases are readily distinguishable. In *Manguso* the libel was in a letter which was placed by a supervisor in the plaintiff's confidential permanent personnel file, of which the plaintiff did not learn for 16 years. In *Olesker,*

the libel was a credit report distributed to a subscriber on a confidential basis. In those cases the libel was committed in an inherently secretive manner. They have no application to a public libel in a nationally distributed magazine widely available to the public, including the plaintiff.[2] Unlike *Manguso* and *Olesker*, there was no concealment of the defamation. (*Johnson* v. *Harcourt, Brace, Jovanovich, Inc.* (1974) 43 Cal.App.3d 880, 896 [118 Cal.Rptr. 370].)

Finally, plaintiff contends that a rule of discovery should apply to his third cause of action, which alleges negligence as distinguished from libel. Regardless of the label which plaintiff chooses, the action is in substance one for libel, and more importantly, it arises out of a mass communication governed by the Uniform Single Publication Act, which applies to a cause of action for "libel or slander or invasion of privacy *or any other tort* founded upon any single publication." (Civ. Code, § 3425.3; italics added; *Khaury* v. *Playboy Publications, Inc., supra*, 430 F.Supp. at pp. 1345-1346.)

The trial court properly determined that plaintiff's claim was barred by the statute of limitations.

The judgment is affirmed.

Stephens, Acting P. J., and Hastings, J., concurred.

---

[2]The distinction was explicitly acknowledged in *Manguso* and *Olesker*. *Manguso* distinguished *Belli* v. *Roberts Brothers Furs, supra*, 240 Cal.App.2d 284, on the ground that "[t]he *Belli* action was governed by the California Uniform Single Publication Act." (*Manguso* v. *Oceanside Unified School Dist., supra*, 88 Cal.App.3d at p. 730.) The court in *Olesker* stated, "We would note that cases involving claimed defamations by credit reporting agencies can be readily distinguished from those involving alleged defamations through so-called mass-media publication. In claimed libels involving, for example, magazines, books, newspapers, and radio and television programs, the publication has been for public attention and knowledge and the person commented on, if only in his role as a member of the public, has had access to such published information." (*Tom Olesker's Excit. W., etc.* v. *Dun & Bradstreet, Inc., supra*, 334 N.E.2d at p. 164.)