[Civ. No. 66470. Second Dist., Div. One. June 15, 1983.]

WILLIAM STRICK et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
LOS ANGELES MAGAZINE, INC., et al., Real Parties in Interest.

COUNSEL

Bernard Sabbath Strick, in pro. per., and Susan P. Strick for Petitioners.

No appearance for Respondent.

Lillick, McHose & Charles, Kenneth E. Kulzick, Amy D. Hogue and Kevin R. Brehm for Real Parties in Interest.

## OPINION

## HANSON (Thaxton), J.—

### INTRODUCTION

An alternative writ of mandate issued to review the trial court's order granting partial summary judgment as to the first and second causes of action, alleging libel, and the third and fourth causes of action, alleging fraud and deceit, of plaintiffs' first amended complaint.

### PROCEDURAL BACKGROUND

On March 27, 1981, petitioners commenced an action for libel against real parties in interest, based on the publication of an article in the April 1980 issue

of Los Angeles Magazine.[1] On November 17, 1981, real parties in interest filed a motion for summary judgment, on the ground that the action was barred by the one-year limitations period set forth in Code of Civil Procedure section 340, subdivision (3). In support of the motion, real parties submitted affidavits which established that 95,000 subscriber copies of the April 1980 issue of Los Angeles Magazine were presented to the United States Postal Service for mailing on March 21, 1980.

One week after the motion for summary judgment was filed, petitioners filed a first amended complaint adding third and fourth causes of action for fraud and deceit and fifth and sixth causes of action for breach of contract to the original first two libel causes of action.[2] Thereafter, on December 14, 1981, real parties' motion for summary judgment, addressing only the original causes of action, was heard before Judge Geernaert. The motion was denied.

On May 7, 1982, real parties in interest again moved for summary judgment, presenting evidence of newsstand sales on the issue of the date of publication and challenging the third and fourth causes of action for fraud and deceit as well as the first and second causes of action for libel. The matter was set for hearing on May 28, 1982, but was continued three times. Real parties filed a reply memorandum in response to petitioners' papers in opposition to the motion, and the matter ultimately was heard on August 25, 1982. The superior court granted defendants' motion for summary judgment as to the plaintiffs' first four causes of action in their first amended complaint but gave them thirty (30) days leave to amend the third and fourth causes of action of their amended complaint to set forth causes of action not barred by the Uniform Single Publication Act, Civil Code, section 3425.3. This ruling leaves intact plaintiffs' fifth and sixth causes of action for breach of oral contract.

---

[1] The record discloses that the original complaint entitled "Complaint for Damages (Libel)," filed on March 27, 1981, contained only two causes of action, both for libel. Attached as exhibit "A" to this original complaint was a copy of the magazine article giving rise to this litigation. In addition, attached as exhibit "B" to the original complaint is a letter from plaintiff William Strick (father of plaintiff Bernard Sabbath Strick) to the defendant Los Angeles Magazine dated April 10, 1980, captioned "Re: Statutory demand for retraction 'Anatomy of a Highrise Murder' published April 1980." This letter, in part, states that "We consider the whole tone of the story libelous . . ." and then lists eight (8) separate statements as libelous or untrue. The letter also asserts that the entire article is biased and slanted and that "Your reporters requested that we talk to them, stating that if we did so, the article would present those favorable aspects of our lives and our son's life which would be material and pertinent and that in the absence of our cooperation, only bad things would be printed. This promise upon which we relied has not been kept."

[2] The first amended complaint attaches as exhibit "A" a copy of the magazine article but does not include a copy of the letter affixed as exhibit "B" to the original complaint. (See fn. 1, supra.)

## Summary Judgment Evidence

In support of the motion for summary judgment, real parties in interest presented evidence that 95,951 subscriber copies of the April 1980 issue of Los Angeles Magazine were received for mailing by the United States Postal Service on March 21, 1980. In addition, real parties presented evidence of the newsstand distribution of the magazine in the form of several uncontradicted declarations.

Kenneth E. Morris (Morris), then regional sales manager for ABC Leisure Magazines and hence responsible for sales of Los Angeles Magazine, regularly visited retailers during each month's two-day delivery period to ensure that Los Angeles Magazine was on display for sale to the public at the appropriate time. The on-sale date for the April 1980 issue of the magazine was March 27, 1980. According to usual practice, delivery would be made over a two-day period, commencing March 26, and concluding on March 27. On March 26, 1980, Morris visited retail outlets and ascertained that approximately half of the 29,000 copies of the April 1980 edition, with the distribution of which he was charged, were then on sale to the public; the balance was in place the following day.

W. Art Renfro, then manager of the Los Angeles magazine and book division of ARA Services (then doing business as the Sunset News Company), a wholesale distributor of Los Angeles Magazine, relates his personal knowledge of the methods employed in receiving the magazine and delivering it to retail outlets and of the business record-keeping practices of Sunset News Company. Twenty-nine thousand five hundred copies of the magazine were received from the publisher on March 19, 1980; an invoice dated March 27, 1980 shows an initial delivery of 27,500 magazines to retail outlets. As a regular business practice, deliveries are made on the invoice date and the preceding day. Approximately 60 percent of the 27,500 copies were delivered to retail outlets on March 26, 1980.

Charlotte Nelson, distribution manager of Drown News Agency, a wholesale distributor in Westminster, California, states her personal knowledge of the record-keeping and distribution practices of that agency. Fourteen thousand eight hundred copies of the April 1980 issue of Los Angeles Magazine were distributed on a two-day, "Wednesday-Thursday" schedule in March 1980; approximately half of the copies were distributed on March 26 and the remainder on March 27.

Allan Brooks, owner of Al's Newsstand, relates the delivery schedule of Los Angeles Magazine to his business. Deliveries of the magazine to Al's Newsstand are always made on a Monday or a Wednesday unless a legal holi-

day falls on those days; the accompanying invoice always bears a date one day later than the actual date of delivery. Accordingly, the invoice date of March 27, 1980, for the April 1980 issue of Los Angeles Magazine means delivery was made on March 26. Deliveries always arrive in the morning, and the magazine is immediately displayed for sale to the public.

In opposition to the motion for summary judgment, petitioners presented the declarations of petitioners William and Anita Strick and of Sharon Levine. Sharon Levine is a subscriber to Los Angeles Magazine, residing in Tarzana, California. She received her copy of the April 1980 issue in the mail on March 27, 1980. After reading that day the article at issue herein, she telephoned petitioners immediately and informed them of the contents.

Petitioner Anita Strick received Sharon Levine's telephone call, after which she informed petitioner William Strick of its content. As a consequence, petitioner William Strick visited at least five newsstands in the Marina del Rey area of his residence, as well as in parts of Los Angeles, where he is employed, in an effort to obtain a copy of the magazine. However, he was unable to locate one.

## ISSUES

Petitioners contend 1) that the trial court acted contrary to law in reconsidering a motion for summary judgment previously denied, where the moving parties failed to comply with Code of Civil Procedure section 1008; 2) that the trial court erred in granting the motion for summary judgment on the ground that the libel causes of action were time-barred; and 3) that the trial court erred in holding the third and fourth causes of action for fraud and deceit were barred by the single publication rule (Civ. Code, § 3425.3).

## DISCUSSION

### I

■ Petitioners' first contention that the trial court acted contrary to law in reconsidering a motion for summary judgment previously denied, absent compliance with Code of Civil Procedure section 1008, is without merit. It is well established that a trial court retains jurisdiction and the discretion to hear a renewed motion after denying previously such a motion, notwithstanding the provisions of section 1008, or its predecessor, section 182. (See, e.g., *Citizens for Parental Rights* v. *San Mateo County Bd. of Education* (1975) 51 Cal. App.3d 1, 6, fn. 4 [124 Cal.Rptr. 68, 82 A.L.R.3d 544]; *Totton* v. *Superior Court* (1937) 18 Cal.App.2d 59, 60 [62 P.2d 1383]; cf. *George Ball Pacific, Inc.* v. *Coldwell Banker & Co.* (1981) 117 Cal.App.3d 248, 253 [172 Cal.Rptr. 597].) In considering real parties' second motion for summary judgment, the trial court did nothing more than exercise its innate powers.

## II

■ We find no merit in petitioners' second contention that the trial court erred in granting summary judgment on the ground that the libel causes of action were time-barred. Under the single publication rule, publication of an integrated issue of a mass media writing occurs upon the first general distribution of the material to the public. (*Belli* v. *Roberts Brothers Furs* (1966) 240 Cal..App.2d 284, 289 [49 Cal.Rptr. 625].) As noted in *Osmers* v. *Parade Publications, Inc.* (S.D.N.Y. 1964) 234 F.Supp. 924, the earliest date on which the allegedly defamatory information is "substantially and effectively communicated to a meaningful mass of readers" is the determinative factor. (*Id.,* at p. 927.) In ascertaining the date of publication, the courts have looked to the mailing date to subscribers on the theory that the publisher is thereby divested of control (*Sullivan* v. *Crisona* (1967) 54 Misc.2d 478 [283 N.Y.S.2d 62, 65]; see also *Winrod* v. *McFadden Publications* (N.D.Ill. 1945) 62 F.Supp. 249, 250), as well as the placement of a substantial body of copies of the publication for sale on the newsstands. (*Wildmon* v. *Hustler Magazine, Inc.* (N.D.Miss. 1980) 508 F.Supp. 87; *Khaury* v. *Playboy Publications, Inc.* (S.D.N.Y. 1977) 430 F.Supp. 1342.) The case of *McGuiness* v. *Motor Trend Magazine* (1982) 129 Cal.App.3d 59 [180 Cal.Rptr. 784] does not hold to the contrary; the issue of the earliest time at which substantial distribution took place was not before the court.

Real parties in interest presented an abundance of competent evidence that, throughout southern California, at least half of the newsstand copies of the April 1980 issue of Los Angeles Magazine were distributed to retail outlets on March 26, 1980. Moreover, subscriber copies were mailed at least three mail days prior to March 27. Petitioners' declarations were wholly inadequate to refute the substantiality of the distribution on March 26. Accordingly, the trial court correctly determined that the one-year limitations period set forth in Code of Civil Procedure section 340, subdivision (3) barred the libel actions which were commenced on March 27, 1981.

## III

■ Petitioners' third contention that the trial court erred in holding that the third and fourth causes of action for fraud and deceit were barred by Civil Code section 3425.3 is untenable as a matter of law. We conclude, as did the trial court, that the third and fourth causes of action for fraud and deceit were also time-barred by reason of the clear language of the Uniform Single Publication Act (Civ. Code, § 3425.3) as construed by *McGuiness* v. *Motor Trend Magazine, supra,* 129 Cal.App.3d 59.

Civil Code section 3425.3 provides: [¶] "No person shall have more than one cause of action for damages for libel or slander or invasion of privacy *or any*

*other tort* founded upon any single publication or exhibition or utterance, such as any one issue of a newspaper or book or magazine or any one presentation to an audience or any one broadcast over radio or television or any one exhibition of a motion picture. Recovery in any action shall include all damages for any such tort suffered by the plaintiff in all jurisdictions." (Italics added.)

In *McGuiness* v. *Motor Trend Magazine, supra,* 129 Cal.App.3d 59 the trial court granted defendants' motion for summary judgment on the ground that the action was barred by the one-year statute of limitations. (Code Civ. Proc., § 340, subd. 3.) The Court of Appeal in affirming the judgment held, amongst other things, that under the Uniform Single Publication Act (Civ. Code, § 3425.3), for purposes of the statute of limitations, the cause of action accrued upon the first general distribution of the publication to the public and that the running of the statute was not delayed until plaintiff discovered the libel, since there was no concealment of the defamation.

The *McGuiness* court, in dismissing *a tort action based on negligence* along with the libel action, stated at page 63, "Finally, plaintiff contends that a rule of discovery should apply to his third cause of action, which alleges negligence as distinguished from libel. Regardless of the label which plaintiff chooses, the action is in substance one for libel, and more importantly, it arises out of a mass communication governed by the Uniform Single Publication Act, which applies to a cause of action for 'libel or slander or invasion of privacy *or any other tort* founded upon any single publication.' (Civ. Code, § 3425.3; italics added; *Khaury* v. *Playboy Publications, Inc., supra,* 430 F.Supp. at pp. 1345-1346.)" (Italics original.)

In the 1977 case of *Khaury* v. *Playboy Publications, Inc., supra,* 430 F.Supp. 1342, the plaintiff, a popular entertainer known to audiences as Tiny Tim, filed an action for damages for defamation, personal and professional injury, and invasion of privacy in violation of the New York Civil Rights Law, resulting from the publication of an article entitled "Miss Vicki" appearing in the OUI magazine. Defendants moved for a summary judgment dismissing the complaint, claiming that the action was barred by the New York one-year statute of limitations.

The *Khaury* court granted the defendant's motion for summary judgment and dismissed the complaint holding that under New York's "single publication rule" the plaintiff's cause of action was untimely filed.

The plaintiff, in an effort to avoid the one-year statute on his civil rights claim, asserted that the "single publication rule" was inapplicable to claims of violation of the New York Civil Rights Law, an invasion of privacy statute, and that the rule should be applied only in defamation situations. The court, in rejecting plaintiff's argument and holding plaintiff's civil rights violation claim

time-barred, focused on the *purpose* behind the single publication rule stating at page 1345: "This rule was adopted in recognition of the vast multiplicity of suits which could arise from mass publications which transcend a variety of medias and state lines, and the attendant problems of choice of law, indefinite liability, and endless tolling of the statute of limitations. See *Gregoire* v. *G. F. Putnam's Sons,* 298 N.Y. at 124-125, 83 N.E.2d 152, Prosser, *Interstate Publications,* 51 Mich.L.Rev. 959, 960-964 (1953).

"It would appear that the rule, then, is not aimed at the particular tort alleged, but rather at the manner in which the tort is executed. If the wrong arises out of a mass communication, then whether it sounds in defamation or statutory invasion of privacy, the same considerations should apply. See Prosser, *Interstate Publication,* 51 Mich.L.Rev. 959, 963-964 (1953). Indeed, the late Judge Hincks of the Second Circuit, sitting on the district court of Connecticut, so held in *Fouts* v. *Fawcett Publications,* 116 F.Supp. 535, 536 (D.Conn. 1953); and other jurisdictions have likewise ruled. See e.g., *Jackson* v. *Ideal Publishing Corp.,* 274 F.Supp. 318 (E.D.Pa. 1967)."[3]

The *Khaury* court in footnote 5, at page 1346, noted "that plaintiff's second cause of action sounds in *prima facie tort,* seeking damages for personal and professional injury as a result of defendants' portrayal of plaintiff's photographs. Neither party makes mention of this cause of action; however, *it is clear that the harm allegedly sustained is the same as that caused by defamation, i.e., injury to reputation, and the same considerations apply.* See *Morrison* v. *National Broadcasting Company,* 19 N.Y.2d 453, 280 N.Y.S.2d 641, 227 N.E.2d 572 (1967)." (Italics added.)

The enactment of section 3425.3 of the Uniform Single Publication Act by the California Legislature reflected great deference to the First Amendment and sought to alleviate many problems presented in respect to tort actions where mass communications are involved. When the Legislature inserted the clause *"or any other tort"* it is presumed to have meant exactly what it said.

In the case at bench, the third and fourth causes of action which sound in fraud and deceit fall within the ambit of "tortious" conduct within the meaning of section 3425.3 and thereby are subject to the one-year statute of limitations as were the first and second causes of action. To hold otherwise would nullify

---

[3]In *Khaury* the court pointed out that the Uniform Single Publication Act section 1, 9C Uniform Laws Annotated, which expressly applies the single publication rule to invasion of privacy claims founded upon mass communications [identical in language to California Civil Code section 3425.3], has been adopted in jurisdictions other than New York, namely: Arizona (Ariz. Rev. Stat. § 12-651); California (West's Ann. Civ. Code, § 3425.1 et seq.); Idaho (Idaho Code, § 6-702 et seq.); Illinois (Ill. Rev. Stat. ch. 126, § 11 et seq.); New Mexico (1953 Comp. § 40-27-30 et seq.); North Dakota (N.D. Cent. Code § 14-02-10); Panama Canal Zone (4 C.Z. Code).

the clear language and applicability of section 3425.3 and thwart the policy enunciated by the Legislature concerning *mass communications* by enacting the Uniform Single Publication Act (§ 3425.3).

Here, the *harm* (damage) allegedly sustained by petitioners in their third and fourth tort causes of action for fraud and deceit is the same as that which could be caused by *"libel or slander or invasion of privacy."* The gist of all six causes of action is based on the *contents* of the *mass publication* of an article in the April 1980 issue of Los Angeles Magazine. ■ ■■■ In order for the petitioners herein to recover on their third and fourth causes of action sounding in fraud and deceit, they must necessarily prove up the requisite elements of the "tort" of fraud[4] which includes "resulting damage"—[harm], proof of which is *inextricably linked* to the entire *contents* of the *mass communication.* ■ Having concluded that the libel causes of action are time-barred by the one-year statute of limitations, to permit plaintiffs to pursue an independent tort claim based on fraud and deceit, the proof of a requisite element (damage)—[harm] which must resort to the *contents* of the same allegedly mass communicated libelous article would nullify the clear language and applicability of Civil Code section 3425.3, in contravention of legislative policy concerning mass communications as enunciated by the Legislature by enacting the Uniform Single Publication Act, Civil Code section 3425.3.[5]

## DISPOSITION

The petition for writ of mandate as to the first, second, third and fourth causes of action of the first amended complaint is denied.

Spencer, P. J., and Lillie, J., concurred.

On July 6, 1983, the opinion was modified to read as printed above. Petitioners' application for a hearing by the Supreme Court was denied August 10, 1983.

---

[4]"The elements of fraud, which give rise to the tort action for deceit, are 1) misrepresentation (false representation, concealment or nondisclosure); 2) knowledge of falsity (or 'scienter'); 3) intent to defraud, i.e., to induce reliance; 4) justifiable reliance; and 5) resulting damage."

[5]As previously noted, the superior court's ruling leaves intact the plaintiffs' fifth and sixth causes of action for breach of oral contract since the language in section 3425.3 does not sweep "contract" actions into its ambit as it specifically did for "torts." Moreover, plaintiffs' allege breach of an oral contract to "portray [plaintiffs] in a *favorable* light to the readers of said article," but which "was *unfavorable,* both in general and in specific portions thereof." We note, without deciding, that what may be "favorable" or "unfavorable" (whatever those words mean) may or may not involve proof of a libelous nature or the truth or falsity of the article or any portion thereof.