■ KENNETT LOVE, Appellant-Respondent, v WILLIAM MORROW AND CO., INC., Respondent-Appellant. [597 NYS2d 424] —In an action to recover damages for defamation, the plaintiff appeals from so much of an order of the Supreme Court, Suffolk County (Luciano, J.), entered July 16, 1990, as granted the defendant's cross motion to dismiss the complaint pursuant to CPLR 3211 (a) (1) and (c) on the basis of documentary evidence, and the defendant cross-appeals, as limited by its brief, from so much of the same order as denied its cross

motion to dismiss the complaint pursuant to CPLR 3211 (a) (5), on the basis of the Statute of Limitations.

Ordered that the cross appeal is dismissed *(see, Parochial Bus Sys. v Board of Educ.,* 60 NY2d 539)*;* and it is further,

Ordered that the order is affirmed insofar as appealed from; and it is further,

Ordered that the defendant is awarded one bill of costs.

The present lawsuit is another in a series of defamation actions commenced by the plaintiff, Kennett Love, a former journalist for *The New York Times,* against various authors and publishers who have discussed Love's conduct during the 1953 coup in Iran in which Prime Minister Mossadegh was overthrown and Shah Mohammed Reza Pahlevi was restored to the throne of Iran.

This action against the defendant, William Morrow and Company, Inc. (hereinafter Morrow) arises out of the publication by Morrow of a book entitled *Presidents' Secret Wars: CIA and Pentagon Covert Operations Since World War II* (hereinafter *Presidents' Secret Wars),* authored by John Prados. The entire suit is based on a single sentence in the book, and the context in which it appears, which makes reference to the plaintiff: "On the second day [of rioting] pro-Shah tank units, informed by *New York Times* reporter Kennett Love of weak guard forces at the premier's house, attacked Mossadegh's residence." Prados relied on a 1960 term paper written by Love for a graduate course at Princeton University, as quoted verbatim by author Jonathan Kwitny in the book *Endless Enemies* and in the September/October 1980 issue of *Counter-Spy* magazine, as the sources for this statement. Since Love has never denied the accuracy of the term paper's contents, the court properly dismissed the complaint based upon the defense of truth.

Truth is a complete defense to an action to recover damages for libel, regardless of the harm done by the statement *(see, Bingham v Gaynor,* 203 NY 27; *Jung Hee Lee Han v State of New York,* 186 AD2d 536; *Licitra v Faraldo,* 130 AD2d 555; *De Gregorio v CBS, Inc.,* 123 Misc 2d 491). Moreover, truth need not be established to an extreme literal degree *(see, Yarmove v Retail Credit Co.,* 18 AD2d 790). Provided that the defamatory material on which the action is based is substantially true (minor inaccuracies are acceptable), the claim to recover damages for libel must fail *(see, Rinaldi v Holt, Rinehart & Winston,* 42 NY2d 369, 383, *cert denied* 434 US 969; *Jung Hee Lee Han v State of New York, supra; see also,* Restatement [Second] of Torts § 581A, comment *f,* at 237).

Once a libel cause of action has been asserted by a private-figure plaintiff on a matter of public concern, such as is the case here, the burden is on the plaintiff to plead and prove that the words in suit are substantially false *(see, Philadelphia Newspapers v Hepps,* 475 US 767, 776; *Rinaldi v Holt, Rinehart & Winston, supra,* at 379-380), and the New York courts will not hesitate to apply the ordinary rules of summary judgment when the plaintiff has not set forth sufficient evidentiary facts to generate a triable issue as to the falsity of a statement in issue *(see, Immuno AG. v Moor-Jankowski,* 74 NY2d 548, 561, *affg* 145 AD2d 114, 127-128; *Pollnow v Poughkeepsie Newspapers,* 67 NY2d 778; *Rinaldi v Holt, Rinehart & Winston, supra).*

The plaintiff has not met his burden here. A comparison of the disputed language employed by Prados in *Presidents' Secret Wars* with the plaintiff's own words in his term paper for the Princeton graduate course demonstrates the "substantial truth" of Prados' words, rather than their falsity. That is so because when the appropriate inquiry is made, *i.e.,* "whether the libel as published would have a different effect on the mind of the reader from that which the pleaded truth would have produced" *(Fleckenstein v Friedman,* 266 NY 19, 23), it can be concluded that the effect would be the same in all important respects. The reader realizes from both accounts that Love spoke to pro-Shah tank commanders on the day of the coup and, as a result, the tank commanders went to Mossadegh's residence, where they attacked.

We also find that the court properly dismissed the plaintiff's claim that the defendant violated the applicable standard of care in publishing the statement. The appropriate standard of review is that enunciated by the Court of Appeals in *Chapadeau v Utica Observer-Dispatch* (38 NY2d 196, 199): "[W]here the content of the article is arguably within the sphere of legitimate public concern, which is reasonably related to matters warranting public exposition, the party defamed may recover; however, to warrant such recovery he must establish, by a preponderance of the evidence, that the publisher *acted in a grossly irresponsible manner without due consideration for the standards of information gathering and dissemination ordinarily followed by responsible parties"* (emphasis added).

First, the coup in Iran and the American involvement in that coup are clearly "within the sphere of legitimate public concern." Second, it cannot be said that a publisher acts in a grossly irresponsible manner when the plaintiff's own words are the very source of the statement complained of. In such a

case, there is no reason to doubt the veracity of the information *(see, Gaeta v New York News,* 62 NY2d 340, 351).

Furthermore, Morrow was entitled to rely on Prados' status and reputation as an author in making the decision to publish, without violating the applicable standard of care. The rule, as stated by the Court of Appeals in the leading case of *Rinaldi v Holt, Rinehart & Winston* (42 NY2d 369, 382-383, *cert denied* 434 US 969, *supra),* is that a publisher may rely upon the author's reporting abilities unless there is substantial reason to question the accuracy of the articles or the bona fides of the reporter *(see also, Weiner v Doubleday & Co.,* 74 NY2d 586, 595-596). Prados' background, credentials, and reputation as an author and as a specialist in investigating intelligence activities gave Morrow no pause in depending on his integrity, expertise, and skills as a researcher. Under the circumstances, we conclude that Morrow acted in a reasonable and responsible manner with "due consideration for the standards of information gathering and dissemination," as required, rather than with gross irresponsibility, in reaching its decision to publish *Presidents' Secret Wars.*

The court should also have dismissed the complaint on the basis of the Statute of Limitations defense raised by the defendant. The accrual of a cause of action for libel is said to occur upon the "publication" of the offending material, which the case law has repeatedly defined as the date on which the libelous work was placed on sale or became generally available to the public *(see, Gregoire v Putnam's Sons,* 298 NY 119, 126; *Zuck v Interstate Publ. Corp.,* 317 F2d 727; *Khaury v Playboy Publs.,* 430 F Supp 1342, 1344; *Tomasino v Morrow & Co.,* 174 AD2d 734; *Pascuzzi v Montcalm Publ. Corp.,* 65 AD2d 786; *Sorge v Parade Publs.,* 20 AD2d 338, 343; *see also, Castel v Jean Norihiko Sherlock Corp.,* 159 AD2d 233 [applied to videocassettes]). It should be noted that this is not the same as the "publication date", a term of art in the publishing industry which refers to a time substantially after the material has been shipped to bookstores and sales are already under way, and when publicity events begin.

The defendant has provided ample evidence that *Presidents' Secret Wars* had been disseminated to bookstores and placed on sale to the general public by the end of October 1986 more than one year before the plaintiff's commencement of this action on November 4, 1987. Consequently, the Statute of Limitations is a viable defense.

We have considered the plaintiff's remaining contentions

and find them to be without merit. Sullivan, J. P., Lawrence, Eiber and Santucci, JJ., concur.