**Peter E. TORRES, d/b/a Visa Lottery, Inc., d/b/a Immigration Law Office of Peter E. Torres, Esquire, Plaintiff,**

**v.**

**CBS NEWS, Roseanne Colletti, Ernie Anastos, Beatrice Gruber, "John Doe," being a fictitious name of a CBS undercover cameraman, Congressman Charles E. Schumer, Elizabeth Aviars, and The City of New York, Defendants.**

No. 93 Civ. 6474 (KMW).

United States District Court,
S.D. New York.

Feb. 20, 1995.

Plaintiff, pro se.

Helen M. Gold, CBS Inc., New York City, for defendants CBS News, Roseanne Colletti, Ernie Anastos and Beatrice Gruber.

Richard P. Stanton, Asst. Counsel, Office of General Counsel, House of Representatives, Washington, DC, for defendant Congressman Charles E. Schumer.

Charles C. Graves, II, Asst. Corp. Counsel, New York City, for defendants City of New York and Elizabeth Aviars.

## ORDER

KIMBA M. WOOD, District Judge.

In a Report and Recommendation ("Report") dated August 30, 1994, Magistrate Judge Grubin recommended: (1) that defendant Schumer's motion to dismiss claims one and two of the complaint be granted; (2) that plaintiff's motion for summary judgment on claims one and two be denied; (3) that defendant Schumer's motion for summary judgment on the remaining claims against him be granted; and (4) that the case be remanded to New York State Supreme Court, New York County. In conformity with *Small v. Secretary of Health and Human Services,* 892 F.2d 15, 16 (2d Cir.1989), the Magistrate Judge's Report explicitly cautioned that failure to file timely objections could constitute a waiver of those objections.

On September 23, 1994, plaintiff submitted a letter to this court, indicating that he had not received the Magistrate Judge's Report until September 16, 1994, and seeking an extension to file his objections until October 7, 1994. Although I denied this request on the ground that it was untimely, plaintiff nonetheless filed objections on October 7, 1994.

## Discussion

Rule 72(b) of the Federal Rules of Civil Procedure describes the appropriate procedure for filing written objections to Reports issued by Magistrate Judges regarding dispositive motions. Rule 72(b) provides, in pertinent part:

> Within 10 days after being served with a copy of the recommended disposition, a party may serve and file specific, written objections to the proposed findings and recommendations.

When computing the date by which the parties must file objections, courts are bound by Rule 6 of the Federal Rules of Civil Procedure, which directs that "[i]n computing any period of time prescribed or allowed by these rules ... [w]hen the period of time prescribed or allowed is less than 11 days, intermediate Saturdays, Sundays, and legal holidays shall be excluded in the computation." Fed.R.Civ.P. 6(a). Rule 6 also provides for

an additional three day period when service is made by mail. Fed.R.Civ.P. 6(e).

Under either of two possible methods of computing the applicable deadline, I find that plaintiff's objections are untimely. The calculation that adheres to the precise language of the Federal Rules of Civil Procedure would give plaintiff thirteen days, excluding weekends and holidays, from the date that the Magistrate Judge mailed the Report to plaintiff. Because the Report indicates a mailing date of August 30, 1994, this method of calculation would require plaintiff to submit his objections by September 19, 1994—a full thirteen days after the date on which the Report was mailed, excluding weekends and Labor Day. The objections plaintiff filed on October 7, 1994 thus were not timely.

Another possible way to calculate relevant dates is to view plaintiff as being "served" with the Magistrate Judge's Report on the date on which he professes to have received it. However, even assuming *arguendo* that the Report *was* received by plaintiff on September 16, and that I would credit any explanation plaintiff might offer as to why a Report mailed to the same address designed on the letterhead of his letter dated September 23, 1994 would take over two weeks to arrive, I would *still* conclude that plaintiff's objections were untimely. First, I would find that because of plaintiff's admission that he received the Report on September 16, he is not entitled to the additional three day time period designated to account for service made by mail. Thus plaintiff would have ten days from September 16—excluding weekends and holidays—to file any objections. Under this second, more liberal method of calculation, plaintiff's objections would have been due on September 30, 1994, and thus the objections filed on October 7, 1994 were untimely.

Because I received no timely objections, because I find no clear error on the face of the record, and because the Report is particularly well reasoned, I accept and adopt the Magistrate Judge's recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985) (failure to file timely objections constitutes waiver of objections, and district court review not required); *cf. Small,* 892 F.2d 15 (*Arn* applies even to *pro se* litigants where Report contains proper cautionary language). Accordingly, I grant defendant Schumer's motion to dismiss counts one and two of plaintiff's complaint, and deny plaintiff's motion for summary judgment on these two counts. I also grant defendant Schumer's motion for summary judgment on the remaining claims against him. I further order that this case be remanded to New York State Supreme Court, New York County.

SO ORDERED.

### *REPORT AND RECOMMENDATION*

GRUBIN, United States Magistrate Judge:

Pending are the motion of defendant Congressman Charles E. Schumer to dismiss this case pursuant to Fed.R.Civ.P. 12 or, in the alternative, for summary judgment pursuant to Fed.R.Civ.P. 56 and the motion of plaintiff for summary judgment on the first two of his four claims against Congressman Schumer. I respectfully recommend that Congressman Schumer's motion be granted and plaintiff's motion denied. I further recommend that this case then be remanded to the New York State Supreme Court from which it was removed by Congressman Schumer.[1]

### *BACKGROUND*

Plaintiff, Peter E. Torres, is an attorney who practices immigration law in New York

---

1. Briefing on the instant motions was stayed at the request of the parties pending briefing and determination of a motion filed by plaintiff to remand the case to state court from which Congressman Schumer removed it pursuant to 28 U.S.C. § 1442(a)(1) on September 16, 1993. The motion, if granted, would have allowed the state court to hear all other motions. In a Report and Recommendation of January 19, 1994, I recommended that plaintiff's motion be denied as re-

moval by Congressman Schumer had been clearly proper. Your Honor adopted my recommendation in an Order of May 27, 1994. Thereafter plaintiff responded to Congressman Schumer's motion and also cross-moved. Congressman Schumer filed papers in opposition and reply, and briefing was finally completed on August 12 with a further memorandum of law from plaintiff.

and filed this action in the state court on August 24, 1993 alleging that defendants made false and defamatory statements about a booklet and services that plaintiff offered immigrants in connection with applications to the government's visa lottery program. Of the twelve claims in the complaint, only the first four are against Congressman Schumer and are based on the following undisputed facts.

In May 1992 plaintiff prepared a booklet entitled "Visa Lottery Informational Booklet" intended to aid immigrants applying for visas for permanent United States residency under the upcoming 1993 visa lottery program. Plaintiff sold the booklet for $50 and, in addition, offered to do the application and related work for $150. In soliciting orders, plaintiff used the name "Visa Lottery, Inc.," obtained a Post Office box to receive orders and had available three telephone lines 24 hours a day to provide free information. Believing that many immigrants would contact their Congressional representatives concerning the lottery, plaintiff sent a letter by fax to all Congresspeople in New York and elsewhere regarding his booklet and the other services he offered. Congressman Schumer, the Ranking Member of the Immigration Subcommittee of the Committee on the Judiciary, issued a one-page press release on July 29, 1992 which, in essence, warned illegal aliens to beware of "scam artists" who portrayed themselves as consultants and offered for a fee to complete the lottery application process which, according to the Congressman, was simple enough for anyone to do her or himself. The press release referred specifically to Visa Lottery, Inc. as an example of "[o]ne company looking to make a quick buck off of aliens" and said, "In Brooklyn, we have a word for something like that—chutzpah."

The complaint charges in its first two claims that the references to "plaintiff"[2] as a "scam artist" and "[o]ne company looking to make a quick buck off of aliens" and "call[ing] plaintiff: 'Chutzpah'" were false and defamatory and that Congressman Schumer, in publishing this matter, failed to take proper steps to ascertain its accuracy, acting in a grossly irresponsible manner and with reckless disregard of the truth. The first claim is for libel and the second alleges a "breach" of "a duty of care" owed to plaintiff. Both allege injury to plaintiff's professional character and reputation, mental anguish and loss of business in the sum of $100 million dollars and also seek punitive damages.

The third claim in the complaint, for slander, and fourth claim, again for "breach" of "a duty of care," are based on allegations all "on information and belief" that "on, about, or after July 29, 1992, defendant Schumer held a press conference with the television and broadcast media regarding the defamatory matter of and concerning plaintiff" and "in the presence of the television and broadcasting media spoke of and concerning the plaintiff false and defamatory words and/or statements mentioned in his [press release]." These claims seek precisely the same damages for precisely the same injuries as the first two claims.

The additional eight state-law claims against the other defendants—CBS Inc., Ernie Anastos, Roseanne Colletti, Beatrice Gruber, "John Doe" (a CBS cameraman), and the City of New York and Director of the Mayor's Office for Immigrant Affairs, Elizabeth Aivars—are based on allegations that they reported or made false and defamatory statements about plaintiff on a "Trouble Shooter" television program broadcast by CBS stations and affiliates on August 26, 1992. Because the facts alleged in the complaint against these defendants will be relevant to the discussion below, a brief description is necessary.[3]

**2.** Although the complaint thus refers to "plaintiff," the press release does not mention plaintiff's name, referring only to Visa Lottery, Inc.

**3.** Motions for dismissal and summary judgment were also filed by these other defendants in response to the complaint, but briefing on those have been stayed at the parties' request pending the determination of Congressman Schumer's motion because, if Congressman Schumer's motion is to be granted, as I now recommend herein, remand to state court would then become appropriate.

According to plaintiff, on August 23, 1992 defendant Gruber (a CBS employee but not identified as such at that time to plaintiff), relying on the press release published by defendant Schumer, called plaintiff's office and made an appointment to see him and obtain a booklet, but she did not appear for the appointment. On August 25 she called again to obtain one of the booklets. When plaintiff's secretary told Ms. Gruber it was too late to be mailed the information because the lottery entry had to be submitted by August 28, Ms. Gruber said she would come to the office to pick it up. That day Ms. Gruber went to plaintiff's office with "John Doe" (a CBS undercover cameraman), and they introduced themselves as immigrants who wanted to apply to the lottery for themselves and their relatives. Plaintiff answered their questions and discussed his booklet's information with them for one-half hour, and Ms. Gruber bought one for $50. John Doe, through a concealed camera, had videotaped the visit. The following day, August 26, when plaintiff arrived at his office he found defendant Roseanne Colletti (a CBS reporter) with defendants Gruber, John Doe and a television camera waiting outside the office to interview plaintiff regarding his booklet. Plaintiff refused to appear on television because he was not dressed in a suit and informed Ms. Colletti that he had not committed any wrongdoing in connection with his booklet. Ms. Colletti, however, as plaintiff was being filmed, informed him that he was going to appear on that night's broadcast and that her report was based on the press release of Congressman Schumer. When plaintiff informed Ms. Colletti that he was not aware of the press release, she gave him a copy. That evening CBS News aired a "Trouble Shooter" piece on its nationwide network of stations and affiliates showing segments of plaintiff's discussions with defendants Gruber and Colletti and portraying plaintiff as though committing a crime. During its local airing, defendants Colletti and anchorperson Ernie Anastos made additional

comments about plaintiff's services. It is alleged the broadcast and the comments were false and defamatory. The City of New York and Elizabeth Aivars, Director of the Mayor's Office for Immigrant Affairs, are named as defendants because during the broadcast Aivars, shown with a copy of plaintiff's booklet, also made false and defamatory comments about it.

The eight claims against these defendants are not pleaded against Congressman Schumer. While the factual allegations contain four references to Congressman Schumer's press release,[4] the complaint does not state or imply that defendant Schumer made any statement or utterance concerning plaintiff apart from those in the press release and press conference on which the first four claims are based or played any role in the broadcast or the events leading up to it, other than the fact that the issuance of the press release was what brought plaintiff to the attention of the CBS defendants.

### DISCUSSION

I. *Standards on a motion to dismiss and on a motion for summary judgment*

■ On a motion to dismiss the court accepts all factual allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiff. *See Leatherman v. Tarrant County Narcotics Intelligence & Coord. Unit,* —— U.S. ——, ——, 113 S.Ct. 1160, 1161, 122 L.Ed.2d 517 (1993); *Walker v. City of New York,* 974 F.2d 293, 298 (2d Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1387, 122 L.Ed.2d 762 (1993) *and* —— U.S. ——, 113 S.Ct. 1412, 122 L.Ed.2d 784 (1993). A complaint should not be dismissed unless, "after viewing plaintiff's allegations in this favorable light, 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Walker v. City of New York,* 974 F.2d at 298 (quoting *Ricciuti v. New York*

---

4. Paragraph 38 of the complaint alleges, "[b]ased on information and belief," that defendant Gruber "relied on the [press release] published by defendant Schumer"; paragraph 47 alleges defendant Colletti informed plaintiff that her report was based on the press release; paragraph 48

alleges that when plaintiff told Ms. Colletti he was not aware of the press release, she gave him a copy; and paragraph 56 alleges that in making her broadcast, Ms. Colletti knew it was false because plaintiff had informed her that day that the press release was false.

*City Transit Auth.,* 941 F.2d 119, 123 (2d Cir.1991)).

■ Under Rule 56(c) of the Federal Rules of Civil Procedure a motion for summary judgment must be granted if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party must initially satisfy a burden of demonstrating the absence of a genuine issue of material fact, which can be done merely by pointing out that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The nonmoving party then must meet a burden of coming forward with "specific facts showing that there is a genuine issue for trial," Fed.R.Civ.P. 56(e), by "a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. at 322, 106 S.Ct. at 2552. The court "must resolve all ambiguities and draw all reasonable inferences in favor of the party defending against the motion." *Eastway Constr. Corp. v. City of New York,* 762 F.2d 243, 249 (2d Cir.1985); *see also Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970); *Hathaway v. Coughlin,* 841 F.2d 48, 50 (2d Cir.1988); *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). But the court is to grant summary judgment where the nonmovant's evidence is merely colorable, conclusory, speculative or not significantly probative. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Knight v. U.S. Fire Ins. Co.,* 804 F.2d at 12, 15; *Argus Inc. v. Eastman Kodak Co.,* 801 F.2d 38, 45 (2d Cir.1986), *cert. denied,* 479 U.S. 1088, 107 S.Ct. 1295, 94 L.Ed.2d 151 (1987). To determine whether the nonmoving party has met his or her burden, the court must focus on both the materiality and the genuineness of the factual issues raised by the nonmovant. As to materiality, "it is

the substantive law's identification of which facts are critical and which facts are irrelevant that governs," and a dispute over irrelevant or unnecessary facts will not preclude summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 248, 106 S.Ct. at 2510.

## II. *The applicable limitations period for all four claims against Congressman Schumer is one year*

■ Under New York law an action for libel or slander must be commenced within "one year from the date that the defamatory statement is made available or published, in the case of libel, and one year from the date of utterance in the case of slander." *Johnson v. Shearson Loeb Rhoades, Inc.,* No. 83 Civ. 3937 (JFK), 1984 WL 1028 at *5 (S.D.N.Y. Oct. 18, 1984) (also available on Lexis). *See also Shamley v. ITT Corp.,* 869 F.2d 167, 172 (2d Cir.1989); *Stockley v. AT & T Info. Sys.,* 687 F.Supp. 764, 768 (E.D.N.Y. 1988); *Karam v. First American Bank,* 190 A.D.2d 1017, 1018, 593 N.Y.S.2d 640, 642 (4th Dep't 1993); *Rand v. New York Times Co.,* 75 A.D.2d 417, 424, 430 N.Y.S.2d 271, 275 (1st Dep't 1980); N.Y. Civ.Prac. L. & R. 215(3) (McKinney 1990). Because this action was commenced on August 24, 1993, any claim for relief based on an allegedly defamatory publication made available or published, or an allegedly slanderous statement uttered, before August 24, 1992 is time-barred.

As indicated above, the first and third claims in the complaint are for libel and slander, respectively, and the second and fourth are for "breach" of "a duty of care." However, the paragraphs of the complaint setting forth the second and fourth claims do not differ in any material respect from the corresponding paragraphs of the first and third claims. In apparent response to the contention made in Congressman Schumer's motion papers that the second and fourth claims are simply superfluous defamation claims for statute of limitations purposes, plaintiff offhandedly now mentions in his 3(g) statement and memoranda of law that they are claims for negligence.[5] Neither the com-

---

**5.** The limitations period for negligence claims in general is three years. *See* N.Y.Civ.Prac.L. & R. 214(4), 214(5) (McKinney 1990). *See, e.g., Jones v. Coughlin,* 696 F.Supp. 916, 924 (S.D.N.Y.

plaint nor his submissions make any attempt, however, to explain the nature of the alleged "duty of care," and no relationship between Congressman Schumer and plaintiff is alleged to give rise to any special duty of care.

New York courts have been alert to attempts to circumvent the one-year period for defamation actions by characterizing the claim or injury as something else, *e.g.,* as negligence, intentional or negligent interference with reputation or prospective contractual relationships, intentional infliction of emotional harm or prima facie tort. "[W]e look for the reality, and the essence of the action and not its mere name." *Morrison v. NBC,* 19 N.Y.2d 453, 459, 280 N.Y.S.2d 641, 644, 227 N.E.2d 572 (1967) (quotation omitted). *See also Gallagher v. Metro North Commuter R.R. Co.,* 846 F.Supp. 291, 293 (S.D.N.Y.1994). "Any other rule would allow a plaintiff to evade the strictures of limitations statutes simply by clever characterization of claims." *Korry v. ITT Corp.,* 444 F.Supp. 193, 195 (S.D.N.Y.1978). The four claims against Congressman Schumer all involve the same allegedly false and defamatory statements, and all seek damages for injury to reputation, the gravamen of an action in defamation. In similar situations, this court as well as the state courts have made it clear that regardless of the terms in which a cause of action may be cast, the one-year limitations period for libel and slander applies. *See, e.g., Korry v. ITT Corp.,* 444 F.Supp. at 195 ("In applying statutes of limitations, we look to the essence of plaintiff's claim, not the label he chooses to tag onto it.... Since, in the instant case, all claims are for redress of injury to reputation, we find that New York's one-year Statute of Limitations, C.P.L.R. § 215(3), for libel and slander actions, should apply."); *Gallagher v. Metro North Commuter R.R. Co.,* 846 F.Supp. at 293; *Gay v. Carlson,* No. 89 Civ. 4757 (KMW), 1992 U.S.Dist. Lexis 15799 at *4, 1992 WL 309819 at *2 (S.D.N.Y. Oct. 15, 1992); *Morrison v. NBC,* 19 N.Y.2d at 458–59, 280 N.Y.S.2d at 643–44, 227 N.E.2d 572.

### III. *Claims one and two*

■ It is undisputed that, as alleged in the complaint, the press release, on which the

1988); *Scott v. Uljanov,* 74 N.Y.2d 673, 674, 543

first two claims are based, was issued by Congressman Schumer's office on July 29, 1992. As plaintiff did not commence this suit until August 24, 1993, he is clearly barred by the one-year statute of limitations because, as indicated above, an action for libel accrues on the date of publication. Plaintiff, however, in an attempt to avoid dismissal, argues a meritless and nonsensical contention: that the statute did not begin to run until August 26, 1992 when he told defendant Colletti that the press release was false, because "publication" only occurs when a third party knows and understands allegedly libelous material to be defamatory:

> In Torres' case, the statute of limitations commenced on August 26, 1992, since it was on this date that Colletti became aware of the defamatory nature of Schumer's news press release. Torres told Colletti the statements in the news press release made by Schumer were false and defamatory. It was at this point Colletti should have understood the significance and the defamatory nature of the news press release.

Plaintiff's Memorandum of Law, June 24, 1994 ("Pl. Memo"), p. 15. In support of this contention, plaintiff quotes as follows from *Sorge v. Parade Publications, Inc.,* 20 A.D.2d 338, 342, 247 N.Y.S.2d 317, 322 (1st Dep't 1964) (the material in brackets shows how the case itself reads, rather than plaintiff's somewhat modified version of the quotation):

> ["]Since a libel is predicated upon the injury to the reputation of the one attacked, and reputation is the opinion of others, no cause of action can arise unless the accusation is in some way brought to the attention of a third person. This bringing the accusation to the attention of a third person is called the act of publication.["] [Seelman, Law of Libel and Slander in New York, p. 115, § 121.] *And, ["]it is necessary not only that the defamatory matter be brought to the attention of a third person but that he understood its defamatory significance.*["] (Restatement, Torts, § 577, comment p. 193; Odger, Li-

N.Y.S.2d 369, 369–70, 541 N.E.2d 398 (1989).

bel and Slander, 6th ed. p. 131; 53 C.J.S., Libel and Slander, § 79.) ]

Since New York has a short Statute of Limitations of one year in defamation cases [CPLR § 215, formerly Civ.Prac. Act, § 510,] to hold that mere delivery of a bundled publication to a carrier constitutes publication so as to relieve the compositor and writer of liability, could well result in almost total deprivation of any right of redress to the person wronged. [The date for release of the offending article or book could be set for almost one year subsequent to such delivery.]

(Emphasis added.) Plaintiff thus argues, apparently on the basis of the underscored sentence, that the statute with respect to defendant Schumer's press release did not begin to run until defendant Colletti knew or had reason to know its contents were false.

Plaintiff's contention fails for many reasons. It might first be pointed out that *Sorge v. Parade Publications, Inc.* involved the special situation carved out by the courts, known as the "single publication rule," for cases involving multiple copies of a publication (*e.g.,* Parade Magazine inserted in Sunday newspapers) that are not generally made available to intended recipients until some date after they have been printed and, in that case, given to shippers and other common carriers for delivery and ultimate distribution. As explained in the last sentence of the quotation—which plaintiff failed to include in his version of the quotation—such material cannot be deemed published for statute of limitations purposes on the date actually printed or a date prior to the general release date when copies may have been obtained by a limited number of persons because a wrongdoer could easily control the ability of a victim of libel to ever bring suit by delaying general release until the statute has run. Congressman Schumer's press release hardly falls into this category. Indeed,

it is undisputed that it was released once, on July 29, 1992, to its intended recipients.

Moreover, as might be expected, the underscored language hardly means what plaintiff says it means. It simply means that unless purportedly libelous material is actually communicated to some third person, there has been no "publication" of it on the basis of which a plaintiff could have been injured.[6] The authorities cited by the *Sorge* court after the underscored sentence—which authorities plaintiff also failed to include in his version of the quotation—make the point quite clearly. The court's language apparently came from the Restatement of Torts where the Comment on p. 193 cited by the court reads: "Since publication requires that the defamatory matter be communicated to a third person, it is necessary not only that the defamatory matter be brought to the attention of a third person but that he understand its defamatory significance." The Restatement then immediately gives the following illustrations to explain its point:

*Illust. 3:* A, a Lithuanian, engages in a violent quarrel with B on the streets in the foreign section of Chicago. In his native tongue, A accuses B of murder. Neither B nor anyone else understands him. A· has not published a slander.

*Illust. 4:* Same facts as in Illustration 3, except that A is overheard by several of his countrymen. A has published a slander.

Restatement of Torts § 577, illus. 3–4, p. 194 (1939). The cases in plaintiff's string citation in his memorandum of law after his quote from *Sorge* merely state, as plaintiff himself quotes, that printing a libel is regarded as a publication when it is delivered to and read by some third person. *E.g., Church of Scientology v. Green,* 354 F.Supp. 800, 803 (S.D.N.Y.1973); *Youmans v. Smith,* 153 N.Y. 214, 218, 47 N.E. 265 (1897); *McGill v. Parker,* 179 A.D.2d 98, 106, 582 N.Y.S.2d 91, 96 (1st Dep't 1992).[7] Under plaintiff's position,

---

**6.** Indeed, if third persons to whom it were communicated were made to know that the material was false, there would be no injury to a plaintiff and no cause of action.

**7.** In plaintiff's second memorandum of law he sets forth his quotation from *Sorge v. Parade Publications, Inc.* again, but claims it to have

been said by this court in *Osmers v. Parade Publications, Inc.,* 234 F.Supp. 924 (S.D.N.Y.1964), a case which he claims supports his novel proposition. Plaintiff's Response Memorandum of Law, August 12, 1994 ("Pl. Response Memo"), pp. 6–7. *Osmers,* of course, does not support his theory any more than the rest of his cases (and, while it

reporters, broadcasters and the mass of people who receive press releases issued by Congress are not "third persons." [8]

Finally, even were we to accept plaintiff's theory on its face, his case would have to be dismissed by his own reckoning as he contends that the statements in the press release were, in fact, such that any third persons who read them did "understand their defamatory significance." *See, e.g.,* Pl. Memo, p. 23 ("Schumer's statements as applied to Torres' profession, trade, and business were derogatory and were actually understood by the reasonable reader to be defamatory.") Indeed, the facts with respect to Ms. Colletti and all the other defendants besides Congressman Schumer, including the fact that plaintiff told Ms. Colletti that the press release was false, the event he now claims triggered the commencement of the limitations period, are not even alleged in the complaint until after his four causes of action against Congressman Schumer are fully pleaded. Thus, if it were required for "publication" that that event had occurred, the motion to dismiss the complaint would have to be granted in any event since the pleading on its face would fail to state a claim against Congressman Schumer. And, to belabor the point one further step, it could be noted that the complaint itself belies plaintiff's contention, since he alleges therein in pleading the two libel claims against Congressman Schumer, as indeed he must, that in issuing the press release on July 29, 1992, "defendant Schumer *published* of and concerning the plaintiff defamatory statements in a news press release article . . . that was released and distributed to the broadcast and television media." Complaint ¶ 18. The complaint goes on to allege, prior to any mention of Ms. Colletti, that this matter so *"published"* by defendant Schumer . . . was and is false and defamatory" and *"published"* without defendant Schumer's having purchased or read plaintiff's booklet (¶ 19); *"published"* without defendant Schumer's having taken steps to ascertain its accuracy (¶ 20); *"published"* by defendant Schumer with reckless disregard; that "[i]n *publishing* the defamatory matter, defendant Schumer acted . . . without due consideration for the standards of information gathering *and dissemination* ordinarily followed by responsible parties" (¶ 21); and it was by reason of the foregoing that plaintiff was injured (¶ 22). (Emphases added.) *See also* ¶¶ 24, 25, 26.[9]

Accordingly, without even going beyond the face of the complaint, because publication occurred on July 29, 1992, one year and 26 days before this action was commenced, we must grant the motion to dismiss the first two claims.

## IV. Claims three and four

■ For the third claim against Congressman Schumer, the complaint alleges as follows:

28. Based on information and belief, on, about, or after July 29, 1992, defendant

---

would be of no import in any event, the *Sorge* language he sets forth does not even appear in that case).

8. Apparently, plaintiff believes they may not even be members of "the public." I say this because he argues that to find the limitations period began on July 29 when the press release was issued would " 'fix the accrual date prior to receipt by the public of the libelous material' " (quoting *Zuck v. Interstate Publishing Corp.*, 317 F.2d 727, 731 (2d Cir.1963)) (emphasis omitted) and, further, in contradiction of his own argument, also argues that publication of defendant Schumer's press release did not even occur upon plaintiff's informing Ms. Colletti that the press release was not true but, rather, that "the statute of limitations did not accrue until after CBS News, Inc., aired its broadcast on August 26, 1992, 'publishing' by televising the defamatory and false statements, which CBS' employee knew

to be false or should have known to be false, to the mass audience of television viewers providing Schumer the mass media exposure he sought from his news press release." Pl. Memo, p. 16. Under this additional novel theory that need not be discussed, issuance of a press release is not publication until it is made known to a third person who has read it and comes to know that it is not true and, then, that third person takes the further step of revealing the material to some broader public mass.

9. Plaintiff's memoranda of law are also replete with statements further undermining his own point, such as, "on or about July 29, 1992 Schumer prepared and issued to his constituents and the mass media" the defamatory press release, Pl. Memo, p. 7, and that the press release was released by Congressman Schumer to "the mass media and public." *Id.*, p. 30.

Schumer held a press conference with the television and broadcast media regarding the defamatory matter of and concerning plaintiff.

29. Based on information and belief, defendant Schumer in the presence of the television and broadcasting media spoke of and concerning the plaintiff false and defamatory words and/or statements mentioned in his [press release].

As mentioned earlier, the complaint goes on to allege that the alleged false statements—the contents of which, except by the reference in paragraph 29 to the press release, are not set forth—were made with reckless disregard and grossly irresponsibly,[10] and the fourth claim, which incorporates the complaint's prior allegations, alleges Congressman Schumer "breached" some "duty of care" to plaintiff by so making these unspecified false and defamatory statements at the press conference. Summary judgment must

10. Presumably, the complaint refers to the same statements identified in his first two claims as the false and defamatory ones, *i.e.*, the references in the press release to "scam artist," making "a quick buck" and "chutzpah." However, since we now know that no press conference was ever held, as will be discussed, it is clear plaintiff did not set forth the slanderous statements allegedly made at such press conference since he could not have known of *any* statements so made when he wrote his complaint.

11. The complaint alleges the press conference took place "on, about, or *after*" the date of the issuance of the press release, July 29, 1992. While the motion to dismiss on grounds of the statute of limitations could be granted since the only "reasonable inference" (*see Walker v. City of New York*, 974 F.2d at 298) to be drawn from all the allegations of the complaint is that such a press conference would have been held in conjunction with the press release or shortly thereafter and, in any event, certainly before passage of three more weeks and before the CBS News defendants contacted plaintiff on August 23—indeed, plaintiff himself believes any such press conference would have been held *"in issuing"* the press release (*see* footnote 13, below)—we need not do so and rely on any inferences since it is beyond doubt that summary judgment must be granted because the only evidence presented establishes that no press conference ever occurred.

12. Apparently, plaintiff simply assumed that a press conference would have been held because a press release was issued. In support of Congressman Schumer's motion for summary judgment, however, his Press Secretary, apart from swearing that one did not occur, also explains

be granted to Congressman Schumer on both these claims.[11]

Plaintiff's claim that Congressman Schumer held a press conference is stated "on information and belief." In support of his motion, Congressman Schumer and his Press Secretary state categorically under oath that no press conference on the subject was ever held. Declaration of Charles E. Schumer ¶ 8; Declaration of Robert McCarson ¶ 9. Plaintiff has put forward no rebuttal at all to this sworn evidence. Indeed, he appears to have accepted the fact that Congressman Schumer held no press conference.[12] Plaintiff's bare speculative allegation in his complaint on information and belief that Congressman Schumer held a press conference at which he defamed him cannot withstand Congressman Schumer's showing on personal knowledge that no press conference ever occurred.[13] Rule 56(e) itself provides:

that the office issued two to six press releases a week and only about 10% of them are issued in conjunction with press conferences. McCarson Decl. ¶ 6.

13. Plaintiff's *only* reference whatsoever in any of his responsive papers to Congressman Schumer's showing that there was no press conference at which he could have been defamed is the following curious, illogical and factually incorrect footnote in his first memorandum of law:

To the extent that Schumer denies holding a press conference in issuing the news press release [citations to Schumer papers omitted], Torres at this time without the benefit of discovery is unable to address Counts Three and Four of the complaint which allege slander and negligence in slandering Torres as per Torres' affidavit that defendant Colletti on August 26, 1992 told Torres that she spoke to Schumer and/or someone from his office about the news press release and its broadcast on Channel 2 News. See Plaintiff's Exhibit E: Torres' Affirmation. Therefore, there exists a genuine issue of fact as to Counts Three and Four.

Pl.Memo, p. 2 n. 1.

But, plaintiff's affirmation to which he refers (Ex. F, not E) does *not* state that defendant Colletti told him she spoke to anyone. Its *entire* contents consist of one page, merely averring that Ms. Colletti came to plaintiff's office with her camera crew and showed him the press release which he had never seen before and that plaintiff then telephoned Congressman Schumer who was not in his office and never returned plaintiff's call. Adding to his flatly incorrect

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denial of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

*See also, e.g., Schoenbaum v. Firstbrook,* 405 F.2d 200, 209 (2d Cir.1968), *cert. denied,* 395 U.S. 906, 89 S.Ct. 1747, 23 L.Ed.2d 219

(1969) ("The trial court correctly ruled that when plaintiff failed to submit affidavits on personal knowledge in support of the complaint in opposition to defendants' affidavits on personal knowledge, factual issues were to be resolved against the plaintiff wherever defendants' affidavits conflict with the unsupported allegations of the complaint upon information and belief."); *Moon v. CIA,* 514 F.Supp. 836, 840 (S.D.N.Y.1981). As defendant Schumer has thus established there can be no issue for trial with respect to the alleged defamation at such alleged press conference, summary judgment must be granted on claims three and four of the complaint.[14]

assertion, plaintiff asserts in his second memorandum of law that not only does his affirmation relate that defendant Colletti told him she had spoken to "someone in Schumer's office," but that she again stated she had done so on the broadcast, "as can be seen on the video" of the broadcast provided to the court. Pl.Response Memo, p. 8. But, I have watched the video and found there is no such statement in it and no reference to Congressman Schumer or his office whatsoever.

Moreover, although unsupported allegations in a memorandum of law are insufficient under Rule 56(e) to raise an issue of fact (*see, e.g., Beyah v. Coughlin,* 789 F.2d 986, 989–90 (2d Cir.1986); *Prudential Publishing Co. v. Myron Mfg. Corp.,* 722 F.Supp. 17, 21 (S.D.N.Y.1989) and, furthermore, hearsay evidence is not admissible on a summary judgment motion in any event (*see, e.g., Reyes v. Koehler,* 815 F.Supp. 109, 113 (S.D.N.Y.1993); *First City Federal Savings Bank v. Bhogaonker,* 684 F.Supp. 793, 798 (S.D.N.Y.1988)), even were we to assume that defendant Colletti made such a statement to plaintiff and that she did speak "to Schumer and/or someone from his office about the news press release and its broadcast on Channel 2 News" (although, it might be noted, Congressman Schumer and his staff have sworn they had no such contact with anyone at CBS), such a conversation, whatever its contents might have been which are not alleged anywhere by plaintiff, would have nothing whatsoever to do with whether Congressman Schumer held the press conference on which claims three and four of the complaint are based and, therefore, could create no issue of fact that could preclude summary judgment.

Plaintiff would appear to miss the critical point: Claims three and four, based entirely on defendant's Schumer having held a press conference at which he slandered plaintiff, must be dismissed upon the uncontroverted showing that there was no press conference. Thus, to the extent plaintiff is saying he needs discovery as to some alleged conversation defendant Colletti had with Congressman Schumer's office, he is mis-

taken, as he would be raising a dispute over facts which are irrelevant to his third and fourth claims. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 248, 106 S.Ct. at 2510; *Knight v. U.S. Fire Ins. Co.,* 804 F.2d at 11–12. Moreover, to the extent he may be saying he needs *any* discovery with respect to this motion, he would have been required to file an affidavit explaining, among other things, what facts he would seek and "how those facts are reasonably expected to create a genuine issue of material fact." *Hudson River Sloop Clearwater, Inc. v. Department of the Navy,* 891 F.2d 414, 422 (2d Cir.1989). *See also Burlington Coat Warehouse Corp. v. Esprit De Corp.,* 769 F.2d 919, 926 (2d Cir.1985); *210 East 86th Street Corp. v. Combustion Eng'g, Inc.,* 821 F.Supp. 125, 143–44 (S.D.N.Y.1993).

14. Plaintiff's memoranda of law claim there to be a myriad of issues of fact, but we need not address them. They are either not issues at all or irrelevant and immaterial to the issues requiring dismissal of his claims. He raises, for example, whether the purpose of the press release was to "influence the mass media to focus on a specific topic which would not otherwise be an issue" (which plaintiff contends) or to inform the Congressman's Brooklyn constituents on a matter of public interest (which purpose defendant Schumer states), *see* Pl.Response Memo, pp. 7–8, and whether the statements in the press release were in fact defamatory, *see id.,* p. 9.

It should be noted that plaintiff's response to Congressman Schumer's motion does correctly point out that Congressman Schumer had failed to include the statement of material facts required under this Court's Civil Rule 3(g). To cure this problem, however, defendant Schumer submitted with his memorandum that was both in reply on his motion and in opposition to plaintiff's cross-motion another notice of motion and a 3(g) statement. Arguing in his further memorandum that the Civil Rules do not permit a late 3(g) statement and that the Federal Rules of Civil Procedure do not permit a movant to make the same motion twice, plaintiff now insists

*V. Upon dismissal of Congressman Schumer, this case should be remanded to the New York Supreme Court*

 The basis for this action's being in this court was Congressman Schumer's presence as a defendant in it. While it is a matter of this court's discretion whether or not to retain the case since "[i]f the federal party is eliminated from the suit after removal pursuant to [§ 1442(a)(1) ], the district court does not lose its ancillary or pendent-party jurisdiction over the state law claims against the remaining non-federal parties," *District of Columbia v. Merit Sys. Protection Bd.*, 762 F.2d 129, 132–33 (D.C.Cir.1985); *see also* Sharon E. Grubin & Deborah E. Lans, *Removal, in Federal Civil Practice* 80, 100 (Georgene M. Vairo ed., 1989), the considerations to be applied in exercising that discretion direct remand in this case. Those considerations are comity, federalism, judicial economy and fairness to the litigants. *See District of Columbia v. Merit Sys. Protection Bd.*, 762 F.2d at 133; *Falls Riverway Realty, Inc. v. City of Niagara Falls*, 732 F.2d 38, 42 (2d Cir.1984); *Galella v. Onassis*, 487 F.2d 986, 996 (2d Cir.1973); *805 Third Ave. Co. v. Excel Mktg. Enterprises Corp.*, Nos. 85 Civ. 5205, 85 Civ. 7030, 85 Civ. 7031 (CSH), 1987 U.S.Dist. Lexis 5281 at *15, 1987 WL 12822 at *5 (S.D.N.Y. June 17, 1987), *aff'd*, 847 F.2d 834 (2d Cir.1988); *Givoh Assocs. v. American Druggists Ins. Co.*, 562 F.Supp. 1346, 1352 (E.D.N.Y.1983).

When the federal party is eliminated shortly after removal and there has been "no substantial commitment of judicial resources" to the remaining state-law claims, remand to the state court is clearly warranted. *805*

*Third Ave. Co. v. Excel Mktg. Enterprises Corp.*, 1987 U.S.Dist. Lexis 5281 at *15, 1987 WL 12822 at *5. *See District of Columbia v. Merit Sys. Protection Bd.*, 762 F.2d at 133; *Givoh Assocs. v. American Druggists Ins. Co.*, 562 F.Supp. at 1352. No judicial resources have yet been expended on this case's state-law claims. Plaintiff, of course, presumably would prefer remand as it was he who moved that it be remanded after Congressman Schumer's removal of it to us. While his motion had to be denied at that time, upon Congressman Schumer's dismissal from the case, remand is clearly the appropriate course.

### CONCLUSION

For the foregoing reasons, I respectfully recommend that defendant Schumer's motion to dismiss claims one and two of the complaint be granted; plaintiff's motion for summary judgment on those claims be denied; defendant Schumer's motion for summary judgment on the remaining claims against him, three and four, be granted; and that the case be remanded to the New York State Supreme Court, New York County.

Copies of this Report and Recommendation were mailed August 30, 1994 to the following:

Peter E. Torres, Esq.
P.O. Box 1155
New York, New York 10035–0808

Helen M. Gold, Esq.
CBS Inc.
51 West 52nd Street
New York, New York 10019

---

that Congressman Schumer's 3(g) statement can properly be considered only in opposition to plaintiff's cross-motion but not in support of defendant Schumer's own motion and that defendant Schumer's motion for summary judgment must therefore be denied. The irrationality of plaintiff's argument—which would mean that a movant who neglects to submit a 3(g) statement at the time of his motion can *never* move for summary judgment—is self-evident. In the absence of any prejudice to plaintiff, there is no reason to deny defendant Schumer the opportunity to cure the admitted oversight. To do the contrary as plaintiff proposes would produce the absurd result of having a case go to trial when there is no issue of fact for trial. (Plaintiff's

additional reference to Congressman Schumer's departure from your Honor's individual rules regarding 3(g) statements might be measured against the extent to which he has ignored them in his own 3(g) statement.)

Plaintiff also argues that his cross-motion should be granted on the basis of uncontroverted statements in his own 3(g) statement. However, a review of his 3(g) statement shows that it presents only undisputed facts that are not material or legal conclusions that have no place in a 3(g) statement in the first place. Thus, it might be noted that, *even accepting as uncontroverted the facts plaintiff sets forth in his 3(g) statement*, nothing herein would be affected and judgment would still be required to be entered against him.

Richard P. Stanton, Esq.
Assistant Counsel, Office of General Counsel
United States House of Representatives
The Capitol, H–112
Washington, District of Columbia 20515

Charles C. Graves, II, Esq.
Assistant Corporation Counsel
City of New York Law Department
100 Church Street, Room 4A–4
New York, New York 10007

The parties are hereby directed that if you have any objections to this Report and Recommendation you must, within ten (10) days from today, make them in writing, file them with the Clerk of the Court and send copies to the Honorable Kimba M. Wood, to the opposing party and to the undersigned. Failure to file objections within ten (10) days will preclude later appellate review of any order that will be entered by Judge Wood. *See* 28 U.S.C. § 636(b)(1); Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure; *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 825, 121 L.Ed.2d 696 (1992); *Small v. Secretary of HHS,* 892 F.2d 15, 16 (2d Cir.1989) (per curiam); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 58 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237 (2d Cir.1983) (per curiam).

Dated: New York, New York
　　　August 30, 1994