Filed 11/16/15  Allen v. Bander CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| PAUL ALLEN, | B263586 |
| Plaintiff and Appellant, | |
| v. | (Los Angeles County Super. Ct. No. BC557130) |
| JOEL BANDER et al., | |
| Defendants and Respondents. | |

APPEAL from an order of the Superior Court of Los Angeles County, Susan Bryant-Deason, Judge.  Affirmed.

Stocker & Lancaster, Michael J. Lancaster for Plaintiff and Appellant.

Law Offices of Jason D. Ahdoot, Jason D. Ahdoot for Defendant and Respondent Joel Bander.

The Luti Law Firm, Anthony N. Luti, for Defendant and Respondent Isynerji Global, Inc.

## INTRODUCTION

This lawsuit is the latest in a protracted series of disputes among several attorneys and media publications serving the local Filipino-American community. Appellant Paul Allen, an attorney, filed a complaint for defamation against respondents Joel Bander and Isynerji Global, Inc. (IGI) (collectively, respondents), among others, alleging that several articles published by respondents in online and print versions of a local newspaper, PinoyWatchDog.com, contained false statements about Allen and his law practice. Respondents moved to strike the complaint under Code of Civil Procedure section 425.16, the anti-SLAPP statute.[1] After the motions were filed but before they were heard, Allen dismissed the lawsuit without prejudice, based on a settlement he had reached with the purported owner of PinoyWatchDog.com. The trial court found that the motions would have succeeded but for the dismissal of the case, and therefore awarded attorneys' fees to respondents under section 425.16. Allen appeals the fee award and the underlying conclusion by the trial court that the anti-SLAPP motions were meritorious. We affirm.

## FACTUAL AND PROCEDURAL HISTORY

*A. Background*

The parties have a long and contentious history, a brief recitation of which will be helpful to clarify the contentions on appeal.

*1. Bander and PinoyWatchDog.com*

Bander is a local attorney. According to Bander, he "managed a mid size law firm and purchased advertising in the Filipino market" from 1995 to 2010, during which time he represented "numerous Filipino-American Newspapers and publishers." Bander continued to practice law until mid-2013, when he was suspended for two years by the State Bar.

---

[1] SLAPP is an acronym for Strategic Lawsuit Against Public Participation. All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

Bander also founded, wrote for, and helped run PinoyWatchDog.com, which operated as both a print newspaper and a website from October 2011 to May 2013. PinoyWatchDog.com was targeted at the Filipino-American community.

2. *Prior Disputes Between Bander and the Allen Family*

One of PinoyWatchDog.com's competitors for Filipino-American readership was Balita Media, Inc. (Balita), a publication run by Allen's parents, Anthony Allen and Luchie Mendoza Allen. Similar to PinoyWatchDog.com, Balita publishes new stories directed to the Filipino-American community, available online and in free print editions distributed to local businesses. (*Ibid.*) Both sell advertising in their print and online publications. (*Ibid.*)

The two publications and their leaders have a history of litigation against each other. For example, Bander served as plaintiff's counsel in several cases against Balita. He was also the named plaintiff in a lawsuit against Balita and Allen's parents, among others, in the case captioned *Bander v. Balita Media, Inc.* (Los Angeles Super. Ct. No. BC483767), alleging that Balita published articles containing false and misleading information about Bander and his law practice. In an unpublished opinion in that case, we noted that Bander and PinoyWatchDog.com were competitors of Balita in the publishing field. (*Bander v. Balita Media Inc.* (July 16, 2013, B245031) [nonpub. opn.] (*Bander*).)[2]

---

[2] We grant Allen's request to take judicial notice of our unpublished opinion in this case, as well as the underlying complaint, pursuant to Evidence Code section 452, subd. (d). Allen has also requested judicial notice of a number of other documents from several of the other cases involving Bander and/or IGI. Allen has not demonstrated how any of these documents would be relevant or helpful to resolving the matters before this court. (See *Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison* (1998) 18 Cal.4th 739, 748, fn. 6.) We also note that we may not take judicial notice of the truth of factual assertions made in documents from another case, which seems to be the basis of much of Allen's request. (See *Sosinsky v. Grant* (1992) 6 Cal.App.4th 1548, 1563–1569.) Finally, Allen's opposition papers to the anti-SLAPP motions in this matter are already part of the record and no judicial notice is required. Thus, the remainder of Allen's request for judicial notice is denied.

Several of the prior lawsuits filed by Bander also implicate James G. Bierne, an attorney whose law office advertises in Balita publications. In prior litigation, as well as in the articles at issue here, Bander claims that Bierne's law practice was actually run by Allen's parents, and that they ultimately substituted Allen as the figurehead and transitioned the advertising to a law office bearing Allen's name.

B. *Complaint*

Allen filed his complaint on September 9, 2014 and then a first amended complaint on November 10, 2014 against Bander, IGI, PinoyWatchdog.com, and Tanod Bayan, Inc. (TBI) Allen alleged that Bander was an "attorney competitor of plaintiff" and "is or was associated in some manner with all other Defendants." TBI allegedly was a "Nevada Corporation . . . doing business as Pinoywatchdog.com." IGI was both a Nevada Corporation and a "corporation organized in the Philippines," was doing business as "Isynerji.com and [] PinoyWatchDog.com," was "an alleged owner of PinoyWatchDog.com" and "holds a registered trademark of PinoyWatchDog.com."

Allen's complaint alleges claims for defamation, intentional interference with economic relationships, intentional interference with prospective economic advantage, unfair competition, and intentional infliction of emotional distress. All of Allen's claims arise from a handful of articles he claims the defendants published in the print and online versions of PinoyWatchdog.com. The original articles were published between February 2012 and May 2013, but Allen alleged that they were subsequently "republished daily." The articles included titles such as "Atty. Paul 'Boy' Allen, Fronting for Others; He Also Faces Contempt of Court Charges," and "Atty. Paul Allen, Heir to Beirne-Balita False Advertising Tradition" and allegedly contain defamatory information about Allen and his law practice. Several of the items are labeled as "parody" and are styled as advertisements for Allen's law office, with text mocking Allen's age and purported lack of experience, and text suggesting that Allen's "mommy and daddy just turned over their Beirne Law Office to me, or at least we are making believe that it's my office." Allen attached copies of the articles at issue to his complaint.

4

*C. The Anti-SLAPP Motions*

    *1. Motions and Supporting Evidence*

On January 16, 2015, IGI moved to strike Allen's complaint pursuant to section 425.16, arguing that the statements were protected speech and that Allen's claims failed because they were barred by the applicable statute of limitations and because he could not establish defamation. Bander filed his own motion to strike on January 29, 2015.

In his declaration filed in support of his motion to strike, Bander stated that he is the founder of PinoyWatchDog.com, which "printed publications from October 2011 to May of 2013." He identified TBI as the "actual publisher" of PinoyWatchDog.com and stated that he acted as "senior columnist," was "involved in some editorial decision making," and "was very personally involved in the administration of the PinoyWatchDog.com web page." Bander stated that the "PinoyWatchDog.com web site has been essentially dormant since May 2013, when the last print edition was issued, except for a few additional stories that were posted." He authored three of the allegedly defamatory articles regarding Allen, as well as over 40 other articles written for PinoyWatchDog.com on a wide range of topics.

Bander acknowledged that he "practiced law for 25 years in Southern California," but stated he practiced "civil litigation" and no bankruptcy law during the period of time when these articles were published. Bander claimed that he stopped practicing law at the end of June 2013.

Both Bander and IGI claimed that IGI was a Nevada corporation created to transport paint to the Philippines and that, aside from holding a trademark for "PinoyWatchDog.com," it had "nothing to do with the newspaper or webpage 'PinoyWatchDog.com.'"[3] Instead, Bander stated that a separate Philippines corporation,

---

[3] In Bander's declaration supporting IGI's motion to strike, Bander states that he is the "corporate secretary" for IGI, and that IGI had "no ownership" in IGI-Philippines, "even though the names are exactly the same." None of the parties offers a clear explanation regarding the precise ownership and roles of these entities. Fortunately, that issue is largely irrelevant to our analysis here.

also named Isynerji Global, Inc. (IGI-Philippines), was involved with him in the administration of the newspaper's website.  Bander also presented a declaration from Melissa Salvador, Manila Business correspondent, who stated that IGI-Philippines "has always administered the PinoyWatchDog.com webpage since its inception in October 2011," and that she had "personally handled over 90% of this administration."  She also echoed Bander's statement that the webpage had been "essentially dormant since May 2013."

Both Bander and Salvador claimed that it was the "firm policy of PinoyWatchDog.com to not change articles once posted."  Pursuant to this policy, the "digital edition of the printed newspaper would appear on the web page within the week it was published.  These newspaper editions published in digital form . . . were never altered, added to, or changed in anyway [sic]."

2. *Allen's Opposition*

Allen filed his opposition and objections to IGI's motion on January 29, 2015.[4]  In his declaration, Allen claimed that both he and Bander were licensed attorneys "whose clientele is largely from the Filipino community."  Allen thus contended that he and Bander were "dual competitors" as attorneys and based on Bander's competition with Balita as newspaper publishers.

Allen also contended that the allegedly defamatory articles continued to be available on the PinoyWatchDog.com website, via a link titled "Blasts from the Past."  Allen included as exhibits copies of several of the articles that appear to have been accessed in 2014 and 2015, and noted that the website includes links to other sites such as Facebook, Twitter, and Pinterest, allowing users to "like," comment on, or share the articles.

---

[4] It does not appear that Allen filed a separate opposition to Bander's anti-SLAPP motion.

*3. Settlement*

The hearing on the anti-SLAPP motions was scheduled for February 11, 2015. On February 4, 2015, Allen entered into a settlement agreement with TBI[5] under which Allen agreed to dismiss the lawsuit and TBI agreed to "remove all articles and publications on PinoyWatchDog.com about Paul M. Allen, Paul Mendoza Allen, Luchie M. Allen and Luchie Mendoza Allen, from October 13, 2011 through January 31, 2015, all website links of the articles and email links to the articles, to remove and delete all of said articles, and further agree never to republish any of the articles in any form." The following day, February 5, 2015, Allen filed a request to dismiss the entire complaint, without prejudice.

*4. Ruling on Attorneys' Fees*

IGI and Bander subsequently filed motions for attorney's fees, arguing that they were the prevailing parties under section 425.16 and therefore entitled to their fees incurred in preparing their motions to strike. IGI requested $29,472.70 in fees and costs, while Bander requested $37,633.63. Allen opposed.

On April 15, 2015, following a hearing, the trial court issued its ruling granting the motions for fees by IGI and Bander. The court found that the anti-SLAPP motions were "properly filed and would have been meritorious but for Plaintiff's dismissal of this action." The court agreed that respondents were entitled to attorney's fees incurred, but that "the amount of fees sought by Mr. Bander and Isynerji are overstated because the SLAPP motions of both parties are very similar," indicating that "Defendants' attorneys' worked together and prepared duplicative work." Accordingly, the court awarded the reduced amount of $20,214.13 in fees and costs to Bander and $20,320.20 to IGI. Allen timely appealed.

---

[5] The settlement agreement is entered into between TBI, Al Aquino (as President of TBI) and Rene Villaroman, on one hand, and Allen and Luchie M. Allen (Allen's mother) on the other hand. The agreement contains no explanation why Villaroman or Luchie Allen are parties thereto.

**DISCUSSION**

*A. Section 425.16*

"A SLAPP is a civil lawsuit that is aimed at preventing citizens from exercising their political rights or punishing those who have done so. '"While SLAPP suits masquerade as ordinary lawsuits such as defamation and interference with prospective economic advantage, they are generally meritless suits brought primarily to chill the exercise of free speech or petition rights by the threat of severe economic sanctions against the defendant, and not to vindicate a legally cognizable right."' [Citations.]" (*Simpson Strong–Tie Co., Inc. v. Gore* (2010) 49 Cal.4th 12, 21 (*Simpson*).)

"In 1992, out of concern over 'a disturbing increase' in these types of lawsuits, the Legislature enacted section 425.16, the anti-SLAPP statute. (§ 425.16, subd. (a).) The statute authorized the filing of a special motion to strike to expedite the early dismissal of these unmeritorious claims. (§ 425.16, subds.(b)(1), (f).) To encourage 'continued participation in matters of public significance' and to ensure 'that this participation should not be chilled through abuse of the judicial process,' the Legislature expressly provided that the anti-SLAPP statute 'shall be construed broadly.' (§ 425.16, subd. (a).)" (*Simpson, supra*, 49 Cal.4th at p. 21.)

Analysis of a motion to strike pursuant to section 425.16 involves a two-step process. (*Simpson, supra*, 49 Cal.4th at p. 21.) "First, the defendant must make a prima facie showing that the plaintiff's 'cause of action . . . aris[es] from' an act by the defendant 'in furtherance of the [defendant's] right of petition or free speech . . . in connection with a public issue.' (§ 425.16, subd. (b)(1).) If a defendant meets this threshold showing, the cause of action shall be stricken unless the plaintiff can establish 'a probability that the plaintiff will prevail on the claim.' (*Ibid.*)" (*Simpson, supra*, 49 Cal.4th at p. 21, fn. omitted.)

*B. Prevailing Party on Anti-SLAPP Motion Following Dismissal*

A "prevailing defendant" on an anti-SLAPP motion "shall be entitled to recover his or her attorney's fees and costs." (§425.16, subd. (c).) Although Allen dismissed his complaint before the hearing on respondents' motions to strike, the trial court awarded

attorney's fees to respondents on the basis that they would have prevailed on their anti-SLAPP motions but for the dismissal. Allen contends this was error.

Citing *Coltrain v. Shewalter* (1998) 66 Cal.App.4th 94 (*Coltrain*), Allen argues that the trial court should have found that he was the prevailing party because he realized his objectives in the litigation through his settlement with TBI, and did not need to reach the merits of the motions to strike. In *Coltrain*, the court held that "where the plaintiff voluntarily dismisses an alleged SLAPP suit while a special motion to strike is pending, the trial court has discretion to determine whether the defendant is the prevailing party for purposes of attorney's fees under Code of Civil Procedure section 425.16, subdivision (c)." (*Id*. at p. 107.) In making that determination, the court concluded that "the critical issue is which party realized its objectives in the litigation," and noted that a plaintiff "may try to show it actually dismissed because it had substantially achieved its goals through a settlement or other means, because the defendant was insolvent, or for other reasons unrelated to the probability of success on the merits." (*Ibid*.) Here, Allen claims that he has made such a showing.

The majority of courts to consider this issue, however, have rejected the suggestion in *Coltrain* that a court may "award attorney fees and costs pursuant to section 425.16, subdivision (c)(1) without first determining whether the defendant would have prevailed on the special motion to strike." (*Tourgeman v. Nelson & Kennard* (2014) 222 Cal.App.4th 1447, 1457; see also *Pfeiffer Venice Properties v. Bernard* (2002) 101 Cal.App.4th 211, 218-219; *Liu v. Moore* (1999) 69 Cal.App.4th 745, 752 (*Liu*).) In *Liu*, for example, the court pointed out that "if the plaintiff in a SLAPP suit 'substantially achieved its goals through a settlement or other means,' then the plaintiff succeeded in 'chill[ing] the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances' (§ 425.16, subd. (a)), since that is the purpose of a SLAPP suit." (*Liu, supra*, 69 Cal.App.4th at p. 752.) Instead, "[u]nder the terms of subdivision (c), the critical issue is the merits of the defendant's motion to strike. This is as it should be. Persons who threaten the exercise of another's constitutional rights to speak freely and petition for the redress of grievances should be adjudicated to have done so, not

9

permitted to avoid the consequences of their actions by dismissal of the SLAPP suit when a defendant challenges it." (*Ibid.*)

We agree with the *Liu* court that a "defendant who is voluntarily dismissed, with or without prejudice, after filing a section 425.16 motion to strike, is nevertheless entitled to have the merits of such motion heard as a predicate to a determination of the defendant's motion for attorney's fees and costs under subdivision (c)." (*Liu, supra*, 69 Cal.App.4th at p. 751; accord *Pfeiffer Venice Properties v. Bernard*, *supra*, 101 Cal.App.4th at p. 214 (anti-SLAPP defendants "were entitled to a ruling on the merits of their SLAPP motion, the result of which will necessarily determine their right to attorney fees under section 425.16, subdivision (c)".) As such, we turn to a review of the merits of respondents' motions; we disregard Allen's claim that he substantially achieved his goals through settlement as irrelevant to that analysis.

## C. Commercial Speech Exemption

As a threshold issue, Allen contends that his complaint is exempt from the anti-SLAPP statute under the commercial speech exemption in section 425.17, subdivision (c). The commercial speech exemption "should be narrowly construed. [Citations.]" (*Simpson, supra,* 49 Cal.4th at p. 22.) As the party seeking the benefit of the exemption, Allen bears the burden of proving its applicability. (*Id*. at p. 26.) We review the applicability of the exemption under a de novo standard (*ibid*.), and conclude that Allen has failed to meet his burden.

Section 425.17(c) exempts from the anti-SLAPP law "a cause of action arising from commercial speech when (1) the cause of action is against a person primarily engaged in the business of selling or leasing goods or services; (2) the cause of action arises from a statement or conduct by that person consisting of representations of fact about . . . a business competitor's business operations, goods, or services; (3) the statement or conduct was made either for the purpose of obtaining approval for, promoting, or securing sales or leases of, or commercial transactions in, the person's goods or services or in the course of delivering the person's goods or services; and (4) the

intended audience for the statement or conduct meets the definition set forth in section 425.17(c)(2)." (*Simpson, supra*, 49 Cal.4th at p. 30.)

Here, the parties principally focus on the requirement that the statements were made by respondents about "a business competitor's business operations, goods, or services." (§ 425.17, subd. (c)(1).) Allen contends that he and Bander are competitors based on evidence that: (1) they are both civil attorneys who draw clients from the local Filipino-American community; and (2) Bander admitted (and the court found in *Bander*) that he and PinoyWatchDog.com were competitors of Balita as publishers, both of whom were in the business of selling advertising, for the purposes of this statute. (*Bander, supra* (July 16, 2013, B245031).) First, although Allen claims that he and Bander were competing attorneys, he provides no evidence to establish that they practiced the same type of law at the time the articles were published, or otherwise engaged in competition for the same type of client. For example, in his declaration, Bander states that to his knowledge, Allen practiced bankruptcy law, and Bander had "not even been tangentially involved in bankruptcy law since February 2010." Allen provides no evidence to dispute these statements—he does not claim that he practiced other types of law (other than to say that Bander did not prove that Allen only practices bankruptcy law, a burden that is not Bander's to bear), nor does Allen claim that he represented newspaper publishers, as Bander did. And Allen provides no other evidence suggesting competition between himself and Bander as attorneys.[6]

Second, while Allen is correct that our prior decision in a different case concluded that Bander and Balita were competitors as news publishers, he does not explain how that conclusion would be relevant here. The issue before us is the relationship between

---

[6] At oral argument, Allen also pointed to the complaint filed in the prior *Bander* case as evidence that Bander had admitted to practicing bankruptcy law. In that complaint, filed in May 2012, Bander took issue with an advertisement printed by Balita in December 2011. Referring to his practice with his "former law firm" in late 2011, Bander alleged that he "had *formerly* had his own bankruptcy practice, and was, and is, [sic] thoroughly versed in bankruptcy law." These allegations offer no support for Allen's contention that Bander was practicing bankruptcy law in 2012 or 2013.

11

Bander and Allen;[7] apart from Allen's tangential connection to Balita through his parents, Allen does not suggest how Bander's competition with Balita establishes that Bander competes with Allen under the statute.[8] As such, Allen has failed to establish the application of the commercial speech exemption and we shall proceed to examine the merits of respondents' motions to strike.

## D. *Step One: Allen's Claims Arise From a Protected Activity*

As noted above, where a plaintiff voluntarily dismisses a lawsuit while an anti-SLAPP motion is pending, the trial court must determine whether defendants would have prevailed on the motions in order to rule on a request for attorney's fees. We review a trial court's decision on the merits of an anti-SLAPP motion de novo, "engaging in the same two-step process to determine, as a matter of law, whether the defendant made its threshold showing the action was a SLAPP suit and whether the plaintiff established a probability of prevailing. [Citation.]" (*Marijanovic v. Gray, York & Duffy* (2006) 137 Cal.App.4th 1262, 1270.

### 1. *Alleged Activity*

In the first step of a motion to strike under section 425.16, the moving party has the burden of showing that the cause of action arises from an act in furtherance of the right of free speech or petition—i.e., that it arises from a protected activity. (*Zamos v. Stroud* (2004) 32 Cal.4th 958, 965.) Thus, the moving party must establish both (1) that its act constituted protected activity; and (2) that the cause of action arose from that protected activity.

As relevant here, a protected activity under the anti-SLAPP statute includes "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest." (§425.16, subd. (e)(3).) It is undisputed

---

[7] We also note that Allen has made absolutely no showing that IGI was a "competitor" within the meaning of the commercial speech exemption.

[8] Indeed, at oral argument, Allen conceded that he was not seeking to establish that he was a competitor with Bander based on any involvement in publishing, but rather solely based on their work as attorneys.

here that Allen's claims arose from the allegedly defamatory statements contained in articles published by PinoyWatchDog.com.  Allen does suggest, however, that respondents did not meet their burden to show that these statements were made in a public forum in connection with an issue of public interest.

We disagree.  It is well settled that "[w]eb sites accessible to the public . . . are 'public forums' for purposes of the anti-SLAPP statute."  (*Barrett v. Rosenthal* (2006) 40 Cal.4th 33, 41, fn. 4; see also, e.g., *Ampex Corp. v. Cargle* (2005) 128 Cal.App.4th 1569, 1576; *Huntingdon Life Sciences, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc*. (2005) 129 Cal.App.4th 1228, 1247; *Wilbanks v. Wolk* (2004) 121 Cal.App.4th 883, 895; *ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 1007.)  Further, "although 'not every Web site post involves a public issue' [citation], consumer information that goes beyond a particular interaction between the parties and implicates matters of public concern that can affect many people is generally deemed to involve an issue of public interest for purposes of the anti-SLAPP statute.  [Citations.]" (*Wong v. Tai Jing* (2010) 189 Cal.App.4th 1354, 1366–1367.)

Here, the articles at issue contain express warnings to its readership regarding the "ongoing pattern of deceit" by Allen as a "danger to the community."  It is clear therefore that these articles are matters of public interest within the meaning of the anti-SLAPP statute.  (See, e.g., *Carver v. Bonds* (2005) 135 Cal.App.4th 328, 343–344 [newspaper article about medical practitioner involved issue of public interest where information would assist others in choosing doctors]; *Wilbanks v. Wolk, supra*, 121 Cal.App.4th at p. 898 [statements about insurance broker involved issue of public interest because they constituted a consumer warning to others with similar problems].)  We therefore conclude that respondents have met their burden under the first prong of the anti-SLAPP statute.[9]

---

[9] At oral argument, Allen noted that he filed objections to the evidence submitted by respondents in support of their anti-SLAPP motions, which were never ruled on by the trial court.  Indeed, Allen submitted over 30 pages of largely boilerplate objections to virtually every line of the declarations supporting IGI's motion.  The record contains no

*2. IGI's Standing*

Allen also suggests that because IGI has argued that it had nothing to do with the publication of the articles at issue (a proposition he disputes), it lacks standing to pursue a motion to strike under section 425.16. Allen's argument lacks citation to any authority and is therefore deemed forfeited. (See, e.g., *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785 [holding that argument may be forfeited when appellant "fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority"].)

*E. Step Two: Allen Has Not Established a Probability of Prevailing, as the Statute of Limitations Bars His Claims*

Allen's complaint arises out of articles published by PinoyWatchDog.com, both online and in paper format, no later than May 2013. Because Allen did not file his complaint until September 2014, respondents contend his claims are time-barred under the one-year statute of limitations for defamation. (§ 340(c).) We agree. As a result, Allen cannot demonstrate a probability of prevailing on his claims, as he must in the second step of the anti-SLAPP analysis. (See *Traditional Cat Ass'n, Inc. v. Gilbreath* (2004) 118 Cal.App.4th 392, 398-399 (*Traditional Cat*) [court may consider applicability of statute of limitations defense in considering second step of anti-SLAPP motion].)[10]

---

ruling by the trial court on these objections. In the context of an anti-SLAPP motion, "[w]hen the trial court does not rule on an evidentiary objection, we deem the objection to have been overruled. [Citations.]" (*Zucchet v. Galardi* (2014) 229 Cal.App.4th 1466, 1480, fn. 7; see also *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 534.) On appeal, Allen has not identified any evidentiary ruling that he asserts was incorrect or provided any basis to conclude that the trial court abused its discretion in considering respondents' evidence. Thus, his argument is forfeited. (See *People ex rel. Dept. of Alcoholic Beverage Control v. Miller Brewing Co.* (2002) 104 Cal.App.4th 1189, 1200 [deeming argument forfeited where appellant fails to "present a factual analysis and legal authority on each point made"]; *Del Real v. City of Riverside* (2002) 95 Cal.App.4th 761, 768 ["The appellate court is not required to search the record on its own seeking error."].)

[10] Allen argues that a "dismissal based on the statute of limitations is not a favorable termination" and therefore that the court could not have relied on a statute of limitations bar to award attorney's fees to respondents as prevailing parties under the

Allen's complaint is governed by the single-publication rule. "The single-publication rule was created to address the problem that arose with the advent of mass communication from the general rule in defamation cases that 'each time the defamatory statement is communicated to a third person . . . the statement is said to have been "published,"' giving rise to a separate cause of action. [Citation.]" (*Christoff v. Nestle USA, Inc.* (2009) 47 Cal.4th 468, 477.) In California, the single-publication rule is codified in Civil Code section 3425.3, and provides that "[n]o person shall have more than one cause of action for damages for libel or slander or invasion of privacy or any other tort founded upon any single publication . . . , such as any one issue of a newspaper or book or magazine." A cause of action that is governed by the single-publication rule accrues "from the date of the '"first general distribution of the publication to the public"'" (*Shively v. Bozanich* (2003) 31 Cal.4th 1230, 1245), thereby "'spar[ing] the courts from litigation of stale claims'" filed years after an initial publication is issued. (*Christoff v. Nestle USA, Inc.*, *supra*, 47 Cal.4th at p. 479.)

Allen contends that the single-publication rule does not apply because the allegedly defamatory articles remained posted online and were therefore "continuously" published. That argument has been squarely rejected, as California courts have uniformly applied the rule to websites. (See *Traditional Cat, supra*, 118 Cal.App.4th at p. 399 [applying single-publication rule to "statements published on Internet Web sites" and rejecting plaintiff's argument "that their defamation cause of action arose continuously while the Web site was operating"]; (*Cole v. Patricia A. Meyer & Associates, APC* (2012) 206 Cal.App.4th 1095, 1121; *Long v. Walt Disney Co*. (2004) 116 Cal.App.4th

anti-SLAPP statute. Allen's only cited case, *Lackner v. La Croix* (1979) 25 Cal.3d 747, 751, held that a dismissal based on the statute of limitations is not a favorable termination for purposes of a subsequent malicious prosecution action. That holding has no application to the circumstances here, where plaintiff cannot demonstrate the probability he will prevail because his claims are barred by the statute of limitations, and the moving defendants are therefore entitled to attorney's fees as prevailing parties on their anti-SLAPP motions. And Allen neither cites to, nor attempts to distinguish, the analysis in *Traditional Cat*, which is squarely at odds with his argument here. (*Traditional Cat, supra,* 118 Cal.App.4th at pp. 398-399.)

868, (2004); *Roberts v. McAfee*, Inc. (9th Cir. 2011) 660 F.3d 1156, 1167 [collecting cases].) Allen's citation to *Hellar v. Bianco* (1952) 111 Cal.App.2d 424, an inapplicable case that predates the codification of the single publication rule in California (not to mention the Internet) does not support his claim. (See *Roberts v. McAfee*, Inc., *supra*, 660 F.3d at p. 1168 (noting that *Hellar* does not "address[] the definition of republication; indeed, [it does not] address[] the single-publication rule at all").) Likewise, Allen's unsupported suggestions that the "length of time the Defendants keep the Articles posted . . . determines the number of republications" and that length of time is a "question of fact for the jury" are contrary to authority, as discussed above.

Allen further argues that the statute of limitations was reset because the articles were "republished" less than a year before he filed his action. He does not identify any republication in paper format, but contends that the articles were republished when they were posted in the "Blasts from the Past" section of the PinoyWatchDog.com website. In the context of online publication, "under California law, a statement on a website is not republished unless the statement itself is substantively altered or added to, or the website is directed to a new audience." (*Yeager v. Bowlin* (9th Cir. 2012) 693 F.3d 1076, 1082.) As such, courts have rejected republication claims where, for example, the challenged posting was posted to a different section of the same website (*Canatella v. Van De Kamp* (9th Cir. 2007) 486 F.3d 1128, 1135), or where website content that did not mention the plaintiff was revised (*Yeager, supra*, 693 F.3d at p. 1082; *Roberts, supra*, 660 F.3d at 1169 [merely continuing to host a press release on a website is "inaction," which "is not a republication"].)

Here, although Allen vaguely alleges that the articles were altered and republished, he provides no evidence that they were changed in any way after their original postings in 2012 and 2013. Instead, the copies of the articles in the record all bear the original posting dates. Moreover, respondents have offered evidence that the articles were not altered, in keeping with the policy of PinoyWatchDog.com, and that the website was essentially dormant after May 2013. Notably, while moving the articles to another section of the website (such as the section linking to "Blasts from the Past")

16

would not constitute republication, Allen does not even offer evidence that such movement first occurred after May 2013. Although he contends that some of the articles were "republished" in 2014 and 2015, those dates merely appear to be the date that Allen accessed the articles on the PinoyWatchDog.com website and printed them; there is no evidence that the content of the articles was altered on these dates. As such, the allegations in Allen's complaint that the articles were "altered, added to, commented upon and directed to new and different audiences" are not sufficient to meet his burden to present admissible evidence. (See *Traditional Cat, supra*, 118 Cal.App.4th at pp. 404-405 ["In establishing the merits of their complaint in the face of a motion to strike, plaintiffs cannot rely on allegations but must present admissible evidence which demonstrates the viability of their claims."].)

Allen also claims that republication occurred when comments were made on the article's page by members of the public, and through links to social media, including Facebook, Twitter, and Pinterest. Allen cites to no authority supporting his argument that allowing comments on a webpage or including links to social media constitutes republication. This argument is therefore forfeited and we need not address it. (See *Badie v. Bank of America, supra,* 67 Cal.App.4th at p. 784-85.) We also note that, even assuming that type of activity could be considered republication, Allen failed to meet his burden to provide any evidence of such republication after May 2013. None of the copies of the articles provided show that they were accessed or commented on through Facebook, Twitter, or any other means after May 2013, other than Allen's own access for the purposes of this case. Indeed, the only comments visible on one of the articles are dated in 2012, and the record contains no evidence as to when any "likes" on Facebook or other links to other sites were utilized.

Finally, Allen suggests that his other causes of action may survive even if his defamation claim is barred by the statute of limitations. In particular, he argues that the four-year statute of limitations for unfair competition claims should govern his remaining claims here. This argument fails, however, because all of Allen's causes of action are premised on the same allegedly defamatory conduct. "Where the complaint is based on

17

an offensive statement that is defamatory, plaintiffs have not been allowed to circumvent the statutory limitation by proceeding on a theory other than defamation. [Citation.]" (*Long v. Walt Disney Co.*, *supra*, 116 Cal.App.4th at p. 873.) California courts have held that the wording of Civil Code section 3425.3, applying the single-publication rule to "any" tort, means exactly that. (*Strick v. Superior Court* (1983) 143 Cal.App.3d 916, 924 [applying statute to determine when the statute of limitations accrues for causes of action for libel, fraud, and deceit based on the publication of a magazine article]; see also *McGuiness v. Motor Trend Magazine* (1982) 129 Cal.App.3d 59, 63 [applying statute to cause of action for negligence]; *Baugh v. CBS, Inc*. (N.D.Cal. 1993) 828 F.Supp. 745, 756 [applying statute to claims including unfair competition, fraud, and infliction of emotional distress to the extent based on the broadcast of information about plaintiff].) Allen's citation to *Cortez v. Purolator Air Filtration Products Co*. (2000) 23 Cal.4th 163, 178-179 is inapposite, as that case does not address the application of the single publication rule to defamation-based claims.

## F.  Attorneys' Fees and Sanctions

The parties also complain about the amount of fees awarded.  First, Allen contends that respondents acted unconscionably by seeking over $60,000 in fees for their duplicative work on the motions to strike.  The trial court agreed that respondents were not entitled to the full amount requested, based on the similarity of their motions, and reduced the award by over $26,000.  We find no error in that decision.

For their part, respondents contend that Allen's appeal was frivolous and request sanctions.  On remand, respondents may recover reasonable fees for this appeal pursuant to section 425.16, subdivision (c).  (*Christian Research Institute v. Alnor* (2008) 165 Cal.App.4th 1315, 1320 ["Appellate challenges concerning the motion to strike are also subject to an award of fees and costs, which are determined by the trial court after the appeal is resolved.  [Citation.]"]; see also *Evans v. Unkow* (1995) 38 Cal.App.4th 1490, 1499–1500 [because section 425.16, subdivision (c) authorizes an award of attorney fees to prevailing party without limitation, appellate attorney fees are also recoverable].)  Because respondents will be awarded fees for this appeal, we deem their request for

sanctions against Allen for filing a frivolous appeal moot.  (See *L.A. Taxi Cooperative, Inc. v. Independent Taxi Owners Association of Los Angeles* (2015) 239 Cal.App.4th 918, 933.)

**DISPOSITION**

Affirmed.  Respondents are awarded their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


COLLINS, J.

We concur:


WILLHITE, Acting P. J.


MANELLA, J.

19